UNEMPLOYMENT INSURANCE COMMISSION, Commonwealth of Kentucky, Appellant,

v.

Garry DYE and Wadsworth Electric, Appellees.

WADSWORTH ELECTRIC, Appellant,

v.

Garry DYE and Unemployment Insurance Commission, Commonwealth of Kentucky, Appellees.

Court of Appeals of Kentucky.

May 15, 1987.

Case Ordered Published By Court of Appeals June 12, 1987.

Charles P. Lawrence, Cabinet for Human Resources, Frankfort, for Unemployment Ins. Com'n.

Bernard J. Blau, Newport, for Garry Dye.

J. Jeffrey Landen, C. Mark Bongard, Thomas A. Brennan, Cincinnati, for Wadsworth Elec.

Before COMBS, HOWARD and LESTER, JJ.

HOWARD, Judge.

The appellee, Garry Dye, was denied unemployment benefits by the Kentucky Unemployment Insurance Commission on the ground that he was terminated for misconduct. The Kenton Circuit Court set aside that ruling and ordered the Commission to award benefits to the appellant.

Dye had worked for six years for Wadsworth Electric as a die setter. Dye was also an official in the union which represented the workers at the factory. On July 16, 1985, Dye approached the assistant factory manager, Tony Roberto, to discuss a problem between another employee and a person in management.

Roberto claimed that Dye failed to give any specific complaints against the management individual, but only made general unfavorable remarks against him. Therefore, Roberto stated to Dye that if he had nothing specific, then he, Roberto, would drop the matter. Dye asserts that he and Roberto began to argue and that he told Roberto there was no sense in arguing and began to walk away. Then, as he turned, Dye claims Roberto told him to forget it.

The ensuing events are undisputed. Dye stated that he was not going to forget the matter and would file a grievance. Roberto replied that Dye should "go ahead and file a grievance." Dye responded by motioning to Roberto with his middle finger, stating "up your ass," and walking away. Roberto then told Dye to go home. Dye did not leave the factory until some 10 or 20 minutes later when Roberto told him to leave again. The next day, Dye was terminated because of his actions the day before.

Dye sought unemployment benefits for the period following his termination, but was denied benefits because he was terminated for misconduct, pursuant to KRS 341.370(1)(b). Dye requested and received a hearing before a referee, but the referee affirmed the denial of benefits and the Kentucky Unemployment Insurance Commission affirmed the referee's decision. An appeal was taken to the Kenton Circuit Court and the court ruled that there was no substantial evidence in the record to support the finding of misconduct and, therefore, the Commission was reversed.

KRS 341.370(1)(b) provides that a worker will be disqualified from receiving unemployment benefits if "[h]e has been discharged for misconduct or dishonesty connected with his most recent work...." KRS 341.370(6) lists some examples of misconduct for purposes of KRS 341.370(1)(b), but does not address the question of offensive language or gestures. KRS 341.-370(6), by its terms, does not provide an exclusive list of the forms of misconduct. There are no cases in Kentucky dealing

with this precise issue. However, we think that the discussion of "misconduct" in case law can provide some guidance.

In *Kentucky Unemployment Insurance Commission v. King*, Ky.App., 657 S.W.2d 250 (1983), this Court cited, with approval, the discussion of misconduct in 76 Am. Jur.2d *Unemployment Compensation*, § 52 (1975). That section contains the following statement:

> Misconduct within the meaning of an unemployment act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard for the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has a right to expect of his employee....* (Emphasis added).

■ We think it is reasonable for an employer to expect his employees to refrain from making obscene gestures or using vulgar language in a belligerent manner when addressing him unless there is justifiable provocation.

In *Reynolds v. Daniels*, 1 Ark.App. 262, 614 S.W.2d 525 (1981), the Court held that a worker was properly denied unemployment benefits for misconduct when he used unprovoked profanity in an argument with his supervisor. The Court stated that the worker's actions were a willful disregard of the standards of behavior an employer has a right to expect. Similarly, in *Kowal v. Commonwealth Unemployment Compensation Board of Review*, 77 Pa.Cmwlth. 378, 465 A.2d 1322 (1983), it was held that, absent justifiable provocation, vulgar language addressed to an employer can constitute willful misconduct resulting in the denial of unemployment benefits.

■ Dye next contends that the characterization of his behavior as misconduct, resulting in denial of unemployment benefits, is an infringement of his right of free speech guaranteed under the First Amendment of the federal constitution. We disagree.

In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572, 62 S.Ct. 766, 769, 86 L.Ed. 1031–1035 (1941), the Court stated:

> It is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

We believe that Dye's words are in this class and, thus, do not merit constitutional protection. *See Reynolds, supra.* Further, we are not persuaded, as urged by Dye, that *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1708, 29 L.Ed.2d 284 (1971), alters this holding.

In *Cohen, supra*, the defendant was convicted of disturbing the peace through offensive conduct because he wore a jacket with a profane slogan on the back referring to the draft. The Court in *Cohen, supra*, specifically distinguished *Chaplinsky, supra*, in part because the words on the jacket were not directed to or meant to provoke any one person as were those in *Chaplinsky*. Like *Chaplinsky, supra*, Dye's words were directed to a specific person.

In addition, the Court in *Cohen, supra*, was concerned with protecting speech which expresses ideas, particularly about public figures and public issues even though distasteful or profane words are used. Words, such as those used by Dye, have little to do with the expression of any ideas. *See Chaplinsky, supra.* Thus, *Cohen, supra*, has little relevance to the in-

stant case. This same conclusion was also reached in *Reynolds, supra.*

The standard of review of an appeal to the courts regarding unemployment compensation is whether the findings of fact are supported by substantial evidence of probative value and, if so, whether the correct rule of law was applied. *Southern Bell Telephone and Telegraph Company v. Kentucky Unemployment Insurance Commission,* Ky., 437 S.W.2d 775 (1969).

█ The essential facts surrounding Dye's conduct are not in dispute and the Commission's findings are supported by substantial evidence. The Commission applied the correct rule of law as Dye's actions amount to misconduct under KRS 341.370(1)(b). The court below then was without authority to reverse the Commission's ruling. Therefore, the judgment is reversed and remanded with directions to reinstate the ruling of the Kentucky Unemployment Insurance Commission.

Further, pursuant to 2.(a) of the Order designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

LESTER, J., concurs.

COMBS, J., dissents with separate opinion.

COMBS, Judge, dissenting:

I respectfully dissent from the majority. The actions of Mr. Dye would certainly justify a summary discharge from employment. We are not concerned with that aspect. The question before us is whether or not this single isolated incident would deprive him of his right to receive unemployment compensation benefits. I think not. It is to be remembered that this controversy concerned a labor representative and management. If workmen, during labor disputes, could be terminated and deprived of unemployment benefits by reason of acts similar to those of Mr. Dye, then the labor movement would be short-lived in Kentucky. The General Assembly, the lawmaking body of this Commonwealth, by enacting KRS 341.370(1) and (6) defined certain actions as misconduct and, as noted by the majority, the statute does not address the question of offensive language or gestures. We are not at liberty to amend, enlarge or restrict plain and unambiguous constitutional legislation. The legislature obviously said what it meant by enacting the statute and we must give meaning to it.

ORDER

Having considered the motions of the Unemployment Insurance Commission and Wadsworth Electric to publish the opinion rendered herein on May 15, 1987, and having been otherwise sufficiently advised, the Court ORDERS that the motions to publish be, and they are hereby, GRANTED. The attached page 1 which notes that the opinion has been ordered published is ORDERED substituted for the corresponding page as originally rendered.