**Salem**

KENNEDY'S PIGGLY WIGGLY STORES, INC.

v.

WALTER COOPER

No. 1174-91-3

Decided June 16, 1992

702

COUNSEL

Mark M. Lawson (Steven R. Minor; Jeffrey A. Sturgill; White, Elliot & Bundy; Sturgill, Mullins & Kennedy, on briefs), for

appellant.

Hugh F. O'Donnell (Client Centered Legal Services of Southwest Virginia, Inc., on brief), for appellee.

OPINION

**KOONTZ, C.J.**—The Virginia Employment Commission (commission) ruled, pursuant to the Unemployment Compensation Act (Act), Title 60.2, Code of Virginia, that Walter Cooper (Cooper) was disqualified from receiving unemployment benefits because he was discharged from his job with Kennedy's Piggly Wiggly Stores, Inc. (Piggly Wiggly) for misconduct. Cooper appealed the decision to the trial court, which reversed the commission's denial of benefits. In this appeal, we must decide whether Cooper was guilty of "misconduct connected with his work" as contemplated by Code § 60.2-618(2). Holding that Cooper was not guilty of misconduct, we affirm the decision of the trial court.

Cooper worked for Kennedy's Piggly Wiggly Store in Big Stone Gap, Virginia as a stockman for almost twenty years. In October 1987, Cooper was disabled from a back injury and a major episode of depression. During his convalescence, Cooper was treated by four physicians who each gave conflicting opinions regarding the appropriate date for Cooper to return to work.

On February 1, 1988, Cooper attempted to report to work upon a release given by one of his doctors. However, Cooper was told to come back the next day for a meeting with company officials to determine whether he was capable of returning to work. Cooper returned the next day for a meeting attended by the store manager, the employer's personnel director, and the employer's chief executive officer. The meeting lasted approximately two and one-half hours.

During this meeting, the chief executive officer repeatedly asked for Cooper's resignation. Toward the end of the meeting, the chief executive officer "got on the subject" of union organizing activities that had occurred among company employees. He stated that he did not think the employees would "go for" union representation and Cooper responded that if they did not, it was because they were afraid of losing their jobs. The chief executive officer told

Cooper that if he was to keep his job, he was expected to do what he was told. Cooper responded, "Well I don't know who you are or where you come from but you're full of shit." Cooper further stated that he did not believe anything told to him by company officials. The chief executive officer fired Cooper for making these remarks. The store manager, who was present for part of the meeting, had no knowledge of Cooper's involvement in union organizing.

The commission found that Cooper's "discharge came about as a direct result of the statement he made to the employer's chief executive officer." Finding that the statement made to the chief executive officer "was so obviously contemptuous and in defiance of his authority as to constitute insubordination," the commission concluded that Cooper was guilty of misconduct. The commission also considered factors in mitigation of Cooper's behavior, including the length of the meeting, the repeated requests for his resignation, and the comments regarding the success or failure of a union organizing drive at Piggly Wiggly with which Cooper was involved. The commission held that these circumstances did not excuse or justify Cooper's misconduct.

The trial court reversed the decision of the commission and held that Cooper was not disqualified from receiving unemployment benefits. The trial court found that Cooper's "expression does not show flagrant disrespect, nor deliberately defy proper authority" and held that the evidence does not support the conclusion that Cooper's remarks constitute misconduct or insubordination.

■ Where the findings of fact of the commission are supported by the evidence and there is no fraud, they are conclusive on appeal and our jurisdiction is limited to questions of law. *Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988). "Whether an employee's behavior constitutes misconduct . . . is a mixed question of law and fact reviewable by this court on appeal." *Id.* (citing *Blake v. Hercules, Inc.*, 4 Va. App. 270, 356 S.E.2d 453 (1987)). We are bound by the commission's findings of fact, which are supported by the evidence. The issue, then, is whether these findings of fact are sufficient, as a matter of law, to constitute misconduct.

■ Employees who are discharged from employment due to "misconduct connected with his work" are disqualified from re-

ceiving unemployment benefits. *Id.* In *Branch v. Virginia Employment Commission*, 219 Va. 609, 249 S.E.2d 180 (1978), the Virginia Supreme Court defined "misconduct connected with work":

> [A]n employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

*Id.* at 611, 249 S.E.2d at 182. The employer bears the burden of proving misconduct. "Absent circumstances in mitigation of such conduct, the employee is 'disqualified for benefits', and the burden of proving mitigating circumstances rests upon the employee." *Id.* at 611-12, 249 S.E.2d at 182.

■ "The *Branch* definition of misconduct has two prongs." *Israel*, 7 Va. App. at 173, 372 S.E.2d at 209. The first prong defines misconduct as a deliberate violation of a company rule. The definition of misconduct under the second prong contemplates actions or omissions of such a nature or so recurrent as to manifest a willful disregard of the employer's interests and the duties and obligations the employee owes the employer. Here, there is no proof that Piggly Wiggly had a company rule forbidding the use of offensive or vulgar language at the workplace and, further, Piggly Wiggly has not alleged that Cooper's behavior was "recurrent." Accordingly, our consideration is limited to determining whether, under the second prong, Cooper's remark was of such a nature as to manifest a willful disregard of Piggly Wiggly's business interests and the duties and obligations Cooper owed Piggly Wiggly.

■ This case raises an issue of first impression in Virginia. However, many of our sister states have considered whether the use of vulgar or offensive language at the workplace, when directed to a superior, bars a claim for unemployment compensation. *See* Annotation, *Use of Vulgar or Profane Language As Bar To Claim For Unemployment Compensation*, 92 A.L.R.3d 106, 117-23 (1979 & Supp. 1991). Generally, these courts have recognized that an employee's use of vulgar or offensive language toward a superior on a isolated occasion may constitute willful misconduct. *Unemployment Ins. Comm'n v. Dye*, 731 S.W.2d 826

(Ky. Ct. App. 1987); *Acord v. Labor & Indus. Relations Comm'n*, 607 S.W.2d 174 (Mo. Ct. App. 1980); *Strong v. Commonwealth, Unemployment Compensation Bd. of Review*, 459 A.2d 57 (Pa. Commw. Ct. 1983). However, in most cases where benefits have been denied, there were other factors, in addition to the offensive language, supporting a denial of benefits.

> Although there is some authority recognizing that a single utterance of profanity or vulgarity may constitute sufficient grounds for a denial of unemployment compensation to an individual discharged for using such language, most of the cases in which a claimant's vulgar or profane language has been held to be a basis for the denial of benefits have involved a combination of factors, of which the claimant's use of offensive language was only one.

*Id.* at 110 (footnote omitted).

A finding of willful misconduct necessarily depends upon the particular circumstances of the case. Here, we must consider the circumstances attending the alleged misconduct to determine whether the words spoken were of such a nature to evince a willful disregard of the employer's interests and the employee's duties and obligations. *See Israel*, 7 Va. App. at 175, 372 S.E.2d at 210-11 (holding that where truck driver had two accidents within two weeks, the circumstances failed to demonstrate a willful disregard of employer's interests or employee's duties and obligations). Accordingly, our inquiry will focus on "the words used and the context in which the words are spoken in determining whether [Cooper] has engaged in misconduct." *See Broyles v. Aeroquip Corp.*, 438 N.W.2d 888, 890 (Mich. Ct. App. 1989).

Our sister states have considered several factors in determining whether the utterance of such language constitutes willful misconduct. Such factors include the severity of the language used; the quantity of the language used, *i.e.*, whether it was a lengthy barrage or a brief incident; whether the language was spoken in the presence of customers, clients or other employees; whether the employee had a record of misconduct; whether prior warnings were given regarding employee's conduct; and whether the language was provoked by the employer. *See, e.g., Reynolds v. Daniels*, 614 S.W.2d 525 (Ark. Ct. App. 1981); *Johnson v. Florida Unemployment Appeals Comm'n*, 513 So. 2d 1098 (Fla.

Dist. Ct. App. 1987); *Stahl v. Florida Unemployment Appeals Comm'n*, 502 So. 2d 78 (Fla. Dist. Ct. App. 1987); *Ortiz v. Armour & Co.*, 597 P.2d 606 (Idaho 1979); *Carroll v. Board of Review*, 477 N.E.2d 800 (Ill. Ct. App. 1985); *Yoldash v. Review Bd. of Ind. Employment Security Div.*, 438 N.E.2d 310 (Ind. Ct. App. 1982); *Warrell v. Iowa Dep't of Job Serv.*, 356 N.W.2d 587 (Iowa Ct. App. 1984); *Carter v. Blache*, 476 So. 2d 873 (La. Ct. App. 1985); *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn. 1984); *Mankato Lutheran Home v. Miller*, 358 N.W.2d 96 (Minn. Ct. App. 1984); *Mitchell v. Lovington Good Samaritan Ctr., Inc.*, 555 P.2d 696 (N.M. 1976); *In re Marquez*, 107 A.D.2d 959, 490 N.Y.S.2d 872 (1985); *Opara v. Carnegie Textile Co.*, 498 N.E.2d 485 (Ohio Ct. App. 1985). *See also* 76 Am. Jur. 2d, *Unemployment Compensation* § 91 (1992).

Even viewing the evidence in the light most favorable to the findings of the commission, *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987), we find that Cooper's use of vulgar language was not of such a nature as to manifest a willful disregard of Piggly Wiggly's business interests or Cooper's duties and obligations to his employer. Cooper's remarks, while vulgar and offensive, were not a lengthy barrage. They were a part of an isolated outburst following a private two and one-half hour meeting of management officals. The stated purpose of the meeting was to determine whether Cooper's medical condition permitted him to return to work. However, the chief executive officer initiated the discussion of union organization at Piggly Wiggly, and repeatedly demanded Cooper's resignation. Cooper had been an employee of Piggy Wiggly for almost twenty years. There is no evidence that he had a record of misconduct. There is no evidence that Cooper's remarks were overheard by store employees or customers. Piggly Wiggly has not alleged that Cooper's remarks disrupted or interfered with store business. Under these circumstances, we hold that misconduct, within the meaning of *Branch*, has not been proven.

■ A forfeiture of benefits will be upheld only where the facts clearly demonstrate "misconduct."

The statutory term "misconduct" should not be so literally construed as to effect a forfeiture of benefits by an employee

except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception.

76 Am. Jur. 2d, *Unemployment Compensation* § 77 (1992). Moreover, we are mindful of the remedial purpose of the Act. *Israel*, 7 Va. App. at 172, 372 S.E.2d at 209. With these considerations in mind, we find that the employer has failed to demonstrate that Cooper's remarks constitute "misconduct" so as to disqualify him from unemployment benefits.

■ In reaching this decision, we do not hold, as employer suggests, that an employee will be entitled to curse or verbally revile his employer at least once and still be entitled to unemployment benefits. We merely hold that *the facts of this case* do not support a finding of willful misconduct so as to result in a forfeiture of unemployment compensation. Indeed, a single, isolated instance of vulgar or offensive language addressed to a superior may, in certain instances, amount to willful misconduct.

■ Although we hold that Cooper is entitled to unemployment benefits, we do not hold that Piggly Wiggly is required to tolerate Cooper's behavior. An employer is entitled to expect the reasonable respect of its employees. "Even employees who are fired for what the employer considers good cause may be entitled to unemployment compensation." *Blake v. Hercules, Inc.*, 4 Va. App. 270, 273, 356 S.E.2d 453, 455 (1987). The issue in this case is not the right of the employer to discharge an employee. Rather, the issue is the employee's right, upon discharge, to receive unemployment benefits.

In sum, we hold that Cooper's remarks to the chief executive officer, under these circumstances, do not evince a willful disregard of his employer's interests or the duties and obligations he owed his employer. Accordingly, the decision of the trial court is affirmed.

*Affirmed.*

Moon, J., and Elder, J., concurred.