COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bray
Argued at Norfolk, Virginia


DEBORAH A. WOOD

v.          Record No. 0814-94-1          OPINION BY
                                    JUDGE JERE M. H. WILLIS, JR.
VIRGINIA EMPLOYMENT COMMISSION          JUNE 20, 1995
and
AMERICOMM DIRECT MARKETING, INC.


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                         Morris B. Gutterman, Judge Designate

                    Gilman P. Roberts, Jr. (Tidewater Legal Aid
                    Society, on briefs), for appellant.

                    Julia D. Tye, Assistant Attorney General
                    (James S. Gilmore, III, Attorney General;
                    Lisa J. Rowley, Assistant Attorney General,
                    on brief), for appellee Virginia Employment
                    Commission.

                    No brief or argument for appellee Americomm
                    Direct Marketing, Inc.


     Deborah A. Wood was discharged from employment by Americomm

Direct Marketing, Inc. on September 16, 1993.  She filed for

unemployment compensation benefits.  Her claim was processed by

the Virginia Employment Commission pursuant to Code Title 60.2,

Chapter 6, Article 5 (Code §§ 60.2-619, et. seq.).  Upon review,

the Commission, acting through a special examiner pursuant to

Code § 60.2-622(C), denied benefits on the ground that Ms. Wood's

discharge resulted from her misconduct and that she was barred

from receiving benefits by Code § 60.2-618(2).  On judicial

review pursuant to Code § 60.2-625, the trial court affirmed the

Commission's determination.

On appeal, Ms. Wood contends that the trial court erred in denying her unemployment compensation benefits and in failing to follow the precedent of Kennedy's Piggly Wiggly Store, Inc. v. Cooper, 14 Va. App. 701, 419 S.E.2d 278 (1992).  We find no error and affirm the judgment of the trial court.

The issue before us is whether Ms. Wood's discharge resulted from misconduct disqualifying her for benefits.  Code § 60.2-618 provides, in pertinent part:

> An individual shall be disqualified for benefits upon separation from the last employing unit for whom he has worked thirty days or from any subsequent employing unit:

> \* \* \* \* \* \* \*

> 2.  . . . [I]f the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.

In Branch v. Virginia Employment Comm'n, 219 Va. 609, 249 S.E.2d 180 (1978), the Supreme Court defined misconduct within the contemplation of Code § 60.2-618(2) as follows:

> [A]n employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.  Absent circumstances in mitigation of such conduct, the employee is "disqualified for benefits," and the burden of proving mitigating circumstances rests upon the employee.

Id. at 611-12, 249 S.E.2d at 182 (citations omitted).

Our standard of review is found in Code § 60.2-625(A), which provides, in pertinent part:

- 2 -

> In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

We "must consider the evidence in the light most favorable to the finding of the Commission." Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554-55 (1987).

On the day of her discharge, Ms. Wood refused to perform a task requested of her by a supervisor. She was taken to the office of Brad G. Stewart, a company vice president, to discuss her insubordination. Mr. Stewart testified:

> [W]e were still talking about that incident, and . . . she . . . , while we were discussing this, . . . she became very upset and . . . said she was just tired of this – of this place and . . . she went right down the line, said she was tired of everybody . . . and she hoped somebody would get – get rid of her so she could get out of here . . . .

Mr. Stewart elaborated:

> And . . . when she told me she was tired of this f---ing place and she – she's tired of f---ing David Craig, and she's tired of myself, she's tired of that fat Don Horace, and that, you know, she just wants out and . . . I said, fine, well she went storming out of the office and . . . that was it. And I went to personnel and started the paper work.

In earlier performance evaluations, Ms. Wood had been cautioned about her attitude and her use of abusive language.

> The Commission's appeals examiner found:
> The employer presented evidence to show that the claimant's actions on her last day at work were disruptive to the work place. Furthermore, the claimant's choice of words were (sic) disrespectful and the claimant knew or should have known that speaking to

the vice president in such a manner could lead to discharge.  Therefore, the Appeals Examiner must find that the claimant was discharged for misconduct connected with her work.

Affirming the foregoing holding, the Commission's special examiner further found:

When she stated that she was tired of working in "this place" and wished someone would get rid of her, she was, in effect, challenging the vice president's authority to terminate her.  The Commission is unable to conclude that she was provoked into saying what she did or using profanity.  Accordingly, she has not established mitigating circumstances for the conduct which brought about her termination and she should be disqualified under [Code § 60.2-618(2)].

Ms. Wood relies on our decision in Kennedy's Piggly Wiggly Stores, Inc. v. Cooper, 14 Va. App. 701, 419 S.E.2d 278 (1992).  In Piggly Wiggly, the employee, who had been injured and disabled, was in a manager's office, discussing with company officials his ability to return to work.  The discussion turned to the subject of unionization and became heated.  Addressing the corporate CEO, whom he did not know, the employee said, "Well I don't know who you are or where you come from but you're full of s---."  He was discharged for insubordination.  Noting that the offensive remark was made under heated circumstances and that no evidence disclosed that the employee had a record of misconduct or that the remark was overheard by store employees or customers, we upheld the trial court's ruling that the remark was insufficient to constitute misconduct under Code § 60.2-618(2).  We announced that decision with the following caveat:

In reaching this decision, we do not hold, as employer suggests, that an employee will be entitled to curse or

verbally revile his employer at least once and still be entitled to unemployment benefits. We merely hold that the facts of this case do not support a finding of willful misconduct so as to result in a forfeiture of unemployment compensation. Indeed, a single, isolated instance of vulgar or offensive language addressed to a superior may, in certain instances, amount to willful misconduct.

Id. at 708, 419 S.E.2d at 282 (emphasis in original).

The holding in Piggly Wiggly does not control this case. Ms. Woods' vulgarity and insubordination was not an isolated incident. She had been cautioned before. It was not simply a mode of expression under circumstances of provocation. It was deliberately offensive and was calculated to challenge the organizational authority of the company and to repudiate her duty to her employer and her superiors.

The evidence supports the Commission's holding. The trial court did not err in affirming that holding.

The judgment of the trial court is affirmed.

Affirmed.

BENTON, J., dissenting.


Although this case is factually similar to <u>Kennedy's Piggly</u> <u>Wiggly Stores, Inc. v. Cooper</u>, 14 Va. App. 701, 419 S.E.2d 278 (1992), the Commission failed to apply <u>Cooper's</u> holding to this case.  Indeed, the parallels between this case and <u>Cooper</u> suggest that the Commission simply ignored <u>Cooper</u>.  The record reveals that following an evidentiary hearing, the appeals examiner who heard the evidence ruled in favor of Deborah Wood and found as follows:

> [Wood] now has the burden of proving that there were mitigating circumstances.  First, [Wood] presented evidence to show that both the Accounts Manager and the vice president also used profanity in speaking to her during their discussions and arguments.  Secondly, [Wood] presented evidence to show that she had never received any progressive discipline per company policy.  Third, the evidence establishes that [Wood] was discharged as a result of an isolated incident.  The Appeals Examiner is convinced that all parties were upset during their discussions and arguments. Taking all of this into consideration, the Appeals Examiner finds that mitigating circumstances exist.  Therefore, [Wood] will not be subject to the disqualifying provisions of the <u>Act</u>.


The special examiner reversed the ruling without any reference to <u>Cooper</u>.  That special examiner is the same special examiner whose decision we reversed in <u>Cooper</u>.  Because the Commission failed to apply the applicable precedent and because the employer failed to carry the burden of proving that Wood's remarks constituted misconduct under Code § 60.2-618(2), I would

- 6 -

reverse the Commission's decision.  Therefore, I dissent.

The Supreme Court of Virginia has defined misconduct as

proscribed by Code § 60.2-618, to be as follows:

> [A]n employee is guilty of "misconduct
> connected with his work" when he <u>deliberately</u>
> violates a company rule reasonably designed
> to protect the legitimate business interests
> of his employer, or when his acts or
> omissions are of such a nature or so
> recurrent as to manifest a <u>willful</u> disregard
> of those interests and the duties and
> obligations he owes his employer.

<u>Branch v. Virginia Employment Comm'n</u>, 219 Va. 609, 611, 249

S.E.2d 180, 182 (1978) (citations omitted).  This is not a case

in which Wood violated a company rule.  Thus, our analysis in

this case is confined to whether Wood's remarks were of "such a

nature . . . as to manifest a willful disregard of [the

employer's business] interests and [Wood's] duties and

obligations . . . [to the] employer."  <u>See</u> <u>Cooper</u>, 14 Va. App. at

705, 419 S.E.2d at 281.

Wood was employed by Americomm as a mail office coordinator

for approximately four and one-half years before she was

discharged.  She was working on a project assigned by her

supervisor when a supervisor from another department asked her to

complete something for him immediately.  Wood first wanted to

complete the job she was doing.  The two argued "and curse words

were exchanged by both parties."  The next day, Wood discussed

this incident with Brad Stewart, Vice President of Operations.

Stewart testified that "as the discussion went on, it got more

heated." Stewart found Wood's use of the word, "fuck," to be abusive. He testified that Wood did not say anything else that he found to be abusive. He also testified that there was no reason for her discharge other than her abusive language during the discussion. Wood testified that both of them had used profanity. The examiner who heard the evidence found that Stewart and Wood used "curse words."

In Cooper, this Court stated that "[a] finding of willful misconduct . . . depends upon the particular circumstances of the case." 14 Va. App. at 706, 419 S.E.2d at 281. This would "include the severity of the language used; the quantity of the language used, i.e., whether it was a lengthy barrage or a brief incident; whether the language was spoken in the presence of customers, clients or other employees; whether the employee had a record of misconduct; . . . and whether the language was provoked by the employer." Id.

The record reflects that Wood's discussion with Stewart got progressively more heated. However, no evidence proved that she initiated the use of profanity. The hearing examiner found that both Wood and Stewart used "curse words."

Wood's remarks were confined to Stewart's office and were made in his presence only; no evidence proved that her remarks were overheard by any customers or employees. See id. at 707, 249 S.E.2d at 282. The employer neither alleged nor proved that Wood's remarks interfered with the business or were "calculated

to challenge the organizational authority of the company."

Although the majority places great weight upon Wood being "cautioned before," Stewart testified that the performance reviews in which Wood's attitude was addressed were not "actual warning[s]" but were "part of an evaluation to help her improve her abilities." In fact, the employer follows a "progressive discipline" procedure, using verbal and written warnings prior to terminations. Stewart testified that Wood had not received any such warnings.

As we stated in Cooper, "[t]he issue in this case is not the right of the employer to discharge an employee. Rather, the issue is the employee's right, upon discharge, to receive unemployment benefits." 14 Va. at 708, 419 S.E.2d at 282. Because the employer failed to prove that Wood's remarks to Stewart constituted a willful disregard of the employer's business interests sufficient to deny her unemployment benefits, I would reverse the trial judge's decision.