WILLIS, Judge.
Deborah A. Wood was discharged from employment by Amerieomm Direct Marketing, Inc. on September 16, 1993. She filed for unemployment compensation benefits. Her claim was processed by the Virginia Employment Commission pursuant to Code Title 60.2, Chapter 6, Article 5 (Code §§ 60.2-619, et seq.). Upon review, the Commission, acting through a special examiner pursuant to Code § 60.2-622(0, denied benefits on the ground that Ms. Wood’s discharge resulted from her misconduct and that she was barred from receiving benefits by Code § 60.2-618(2). On judicial review pursuant to Code § 60.2-625, the trial court affirmed the Commission’s determination.
*516 On appeal, Ms. Wood contends that the trial court erred in denying her unemployment compensation benefits and in failing to follow the precedent of Kennedy’s Piggly Wiggly Stores, Inc. v. Cooper, 14 Va.App. 701, 419 S.E.2d 278 (1992). We find no error and affirm the judgment of the trial court.
The issue before us is whether Ms. Wood’s discharge resulted from misconduct disqualifying her for benefits. Code § 60.2-618 provides, in pertinent part:
An individual shall be disqualified for benefits upon separation from the last employing unit for whom he has worked thirty days or from any subsequent employing unit:
2. ... [I]f the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.
In Branch v. Virginia Employment Comm’n, 219 Va. 609, 249 S.E.2d 180 (1978), the Supreme Court defined misconduct within the contemplation of Code § 60.2-618(2) as follows:
[A]n employee is guilty of “misconduct connected with his work” when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer. Absent circumstances in mitigation of such conduct, the employee is “disqualified for benefits,” and the burden of proving mitigating circumstances rests upon the employee.
Id. at 611-12, 249 S.E.2d at 182 (citations omitted).
Our standard of review is found in Code § 60.2-625(A), which provides, in pertinent part:
In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
*517 We “must consider the evidence in the light most favorable to the finding of the Commission.” Virginia Employment Comm’n v. Peninsula Emergency Physicians, Inc., 4 Va.App. 621, 626, 859 S.E.2d 552, 554-55 (1987).
On the day of her discharge, Ms. Wood refused to perform a task requested of her by a supervisor. She was taken to the office of Brad G. Stewart, a company vice president, to discuss her insubordination. Mr. Stewart testified:
[W]e were still talking about that incident, and ... she ..., while we were discussing this, ... she became very upset and ... said she was just tired of this—of this place and ... she went right down the fine, said she was tired of everybody ... and she hoped somebody would get—get rid of her so she could get out of here....
Mr. Stewart elaborated:
And ... when she told me she was tired of this f—ing place and she—she’s tired of f—ing David Craig, and she’s tired of myself, she’s tired of that fat Don Horace, and that, you know, she just wants out and ... I said, fine, well she went storming out of the office and ... that was it. And I went to personnel and started the paper work.
In earlier performance evaluations, Ms. Wood had been cautioned about her attitude and her use of abusive language.
The Commission’s appeals examiner found:
The employer presented evidence to show that the claimant’s actions on her last day at work were disruptive to the work place. Furthermore, the claimant’s choice of words were (sic) disrespectful and the claimant knew or should have known that speaking to the vice president in such a manner could lead to discharge. Therefore, the Appeals Examiner must find that the claimant was discharged for misconduct connected with her work.
Affirming the foregoing holding, the Commission’s special examiner further found:
*518 When she stated that she was tired of working in “this place” and wished someone would get rid of her, she was, in effect, challenging the vice president’s authority to terminate her. The Commission is unable to conclude that she was provoked into saying what she did or using profanity. Accordingly, she has not established mitigating circumstances for the conduct which brought about her termination and she should be disqualified under [Code § 60.2-618(2) ].
Ms. Wood relies on our decision in Kennedy’s Piggly Wiggly Stores, Inc. v. Cooper, 14 Va.App. 701, 419 S.E.2d 278 (1992). In Piggly Wiggly, the employee, who had been injured and disabled, was in a manager’s office, discussing -with company officials his ability to return to work. The discussion turned to the subject of unionization and became heated. Addressing the corporate CEO, whom he did not know, the employee said, “Well I don’t know who you are or where you come from but you’re full of s—.” He was discharged for insubordination. Noting that the offensive remark was made under heated circumstances and that no evidence disclosed that the employee had a record of misconduct or that the remark was overheard by store employees or customers, we upheld the trial court’s ruling that the remark was insufficient to constitute misconduct under Code § 60.2-618(2). We announced that decision with the following caveat:
In reaching this decision, we do not hold, as employer suggests, that an employee will be entitled to curse or verbally revile his employer at least once and still be entitled to unemployment benefits. We merely hold that the facts of this case do not support a finding of willful misconduct so as to result in a forfeiture of unemployment compensation. Indeed, a single, isolated instance of vulgar or offensive language addressed to a superior may, in certain instances, amount to willful misconduct.
Id. at 708, 419 S.E.2d at 282 (emphasis in original).
The holding in Piggly Wiggly does not control this case. Ms. Wood’s vulgarity and insubordination was not an isolated *519 incident. She had been cautioned before. It was not simply a mode of expression under circumstances of provocation. It was deliberately offensive and was calculated to challenge the organizational authority of the company and to repudiate her duty to her employer and her superiors.
The evidence supports the Commission’s holding. The trial court did not err in affirming that holding.
The judgment of the trial court is affirmed.

Affirmed.