# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Pamela G. Larrabee

v.

Virginia Employment Commission

June 23, 1997

Case No. CL970036

BY JUDGE THOMAS A. FORTKORT

## I. *Question Presented*

The question before the Court is whether or not the Petitioner, Ms. Larrabee, is guilty of misconduct connected with her work and thus disqualified from receiving certain benefits under Virginia Code § 60.2-618. The Virginia Employment Commission answered this question in the affirmative. For the reasons stated below, that decision is affirmed.

## II. *Facts*

As a threshold matter, this Court is required to follow the findings of the Commission as to facts, if supported by evidence. Va. Code § 60.2-625. Those findings are deemed conclusive, and this Court's jurisdiction is narrowly confined to questions of law. *Id.*

In the instant case, the Commission found that the Petitioner was a part-time employee of The Sealaw Group, which is a small company located in northern Virginia. During the week of March 18, 1996, the co-owners of the business attended a trade show in Connecticut. The Petitioner stayed in northern Virginia. One of Petitioner's primary tasks that week was to prepare and send a report to a client. That report had to be sent by 3:30 p.m. on March 21, 1996. During this week, Petitioner sent and the co-owners revised numerous drafts of the report. Both owners actively worked on the report. Though not contained in the findings of the Commission, the Petitioner

contends that the owners frustrated her by providing conflicting and confusing instructions.

On the morning of the March 21st deadline, one of the owners faxed a copy of the most recent draft to the Petitioner. The Petitioner was then instructed to type the revisions and send it "as it was" to the client. The Petitioner began to argue with the co-owner. The co-owner responded by telling the Petitioner to type the report "as it was" and that they could "discuss the matter later." After arguing for nearly ten minutes, the Petitioner told the co-owner that they should come back to Virginia and type the report themselves. Petitioner then hung up on her employer.

Prior to this heated exchange, the co-owner had made business plans to meet with a prospective client for breakfast. The co-owner was to travel by train with this prospective client into New York so that they could attend another conference together. Due to the phone confrontation with the Petitioner, the co-owner was forced to miss breakfast with the prospective client.

Shortly thereafter, the second owner called the Petitioner and instructed her to call the client with whom Petitioner was dealing and advise that client that the report would not be sent on time. This also led to a heated exchange between the Petitioner and the second owner. The second owner then rearranged her schedule and returned to Virginia earlier than planned. Upon her return, the second owner found the report to have actually been prepared by the Petitioner, as instructed. Eventually, the Petitioner was terminated for insubordination and poor performance.

### III. *Discussion*

During oral argument, the Assistant Attorney General, Ms. Gaye Lynn Taxey, was asked whether Petitioner's actions were simply "rude" or did they directly and adversely impact on the employers' business. The Assistant Attorney General's answer was somewhat ambiguous. However, the Commission's finding, with which I am bound, is clear on this point. First, one of the owners was caused to cancel a breakfast meeting with a prospective client. Second, the other owner was forced to cut her Connecticut trip short and return to Virginia to check on the status of the report.

The Petitioner contends that her actions may have been "rude" and perhaps "obnoxious" but did not constitute "misconduct" under the case of *Piggly Wiggly v. Cooper*, 14 Va. App. 701 (1992).

*Piggly Wiggly* involved an employee named Mr. Cooper who worked for the company for nearly twenty years. Mr. Cooper was a stockman and was

disabled due to a back injury. After some period of time, a meeting was set up between Mr. Cooper and the C.E.O. Apparently, Mr. Cooper sought to unionize the shop. The C.E.O. told Cooper that he wanted his resignation. Cooper was also told that if he wanted to keep his job, he had better "do what he is told." Cooper then told the C.E.O. he was "full of shit." The C.E.O. fired Cooper. The Commission found that Cooper was guilty of misconduct. The trial court reversed. The Court of Appeals affirmed the trial court. In doing so, the Court of Appeals made it plain that its decision was fact specific.

*Piggly Wiggly* dealt with the issue of vulgarity and whether the use of such offensive language at the workplace, when directed to a superior, constitutes "misconduct."

At oral argument, Petitioner cited to the factors set forth in *Piggly Wiggly* and concluded that, under those factors, she should prevail. The factors include: (1) the severity of the language used; (2) whether the language was spoken in the presence of customers, clients, or other employees; (3) whether the employee had a history of misconduct; (4) whether prior warnings were given to the employee regarding the employee's behavior; and (5) whether the language used was provoked by the employer. The language used by the Petitioner does not fall under any of these criteria. It was not the vulgarity of her language or the rudeness of her response to her employer that constitutes misconduct in this case.

The actions of the Petitioner here are more troublesome than those committed by Mr. Cooper, the Petitioner in *Piggly Wiggly*. There, the Court of Appeals found that: "Piggly Wiggly has not alleged that Cooper's remarks disrupted or interfered with store business." Here, on the other hand, the findings of fact conclusively establish that: "The co-owner's prolonged discussion with the [Petitioner] caused her to miss breakfast with the potential client." Furthermore, the other owner was forced to depart Connecticut and return to Virginia earlier than planned. Thus, Petitioner's actions directly disrupted and interfered with the company's business. This clearly distinguishes this situation from *Piggly Wiggly*.

Finally, it should be noted that what may constitute "misconduct" in a small business may not amount to "misconduct" in a large corporate setting. The Attorney General made this point at oral argument, and it is well taken. Here, Petitioner was the *only* employee in the Northern Virginia office at the time of the altercation. When Petitioner told her boss to come back and do the work herself and then hung up, the co-owners reasonably feared for the worst. The co-owners then scrambled to insure that the report was prepared as directed. The fact that Petitioner actually went ahead and finished the work is meaningless. The co-owners were forced to alter their schedules, which

68

adversely and directly affected their business. Under the particular facts presented in this case, Petitioner's actions crossed the line from simply being "rude" and "obnoxious" and entered into the zone of "misconduct." For those reasons, the Commission's decision is affirmed.