COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Bumgardner
Argued at Alexandria, Virginia


CALVARY MEMORIAL PARK, INC.,
 T/A FAIRFAX MEMORIAL PARK
                                      MEMORANDUM OPINION* BY
v.    Record No. 1730-98-4            JUDGE SAM W. COLEMAN III
                                           JUNE 29, 1999
VIRGINIA EMPLOYMENT COMMISSION and
 CHRISANTHE FRANCONE


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    J. Howe Brown, Jr., Judge

         Michael H. Doherty (Holmes, Rosenberg &
         Doherty, P.C., on briefs), for appellant.

         Gaye Lynn Taxey, Assistant Attorney General;
         Andrew B. Golkow (Mark L. Earley, Attorney
         General; William A. Diamond, Assistant
         Attorney General; Rees, Broome & Diaz, P.C.,
         on briefs), for appellees.


     Calvary Memorial Park, Inc. (Calvary) appeals the circuit

court order affirming the Virginia Employment Commission's (VEC)

award of unemployment benefits to Chrisanthe Francone.  Calvary

asserts that Francone was disqualified by virtue of Code

§ 60.2-618(2) from receiving unemployment benefits because she was

discharged from her employment for misconduct.  Calvary argues

that the evidence did not support the VEC's findings of fact and

---

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

that the VEC's decision was contrary to the law.  Finding no error, we affirm.

BACKGROUND

On appeal, we consider the evidence in the light most favorable to the finding of the commission.  See Wells Fargo Alarm Services, Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997).

So viewed, the evidence established that Francone worked as a family services counselor selling burial plots for Calvary. Calvary paid Francone by commissions earned from "pre-need" burial plot sales.  A "pre-need" sale refers to the sale of a plot to a customer for future use.  On "pre-need" sales, the customer received a 10 percent discount on the cost of the plot and the family service counselor earned an 18 percent commission.  An "at-need" sale refers to the sale of a plot to a customer for immediate interment.  On "at-need" sales, the customer received no discount and the family service counselor earned no commission. Francone had frequently expressed disagreement with Calvary over its refusal to pay commissions on "at-need" sales.

Houng Ly spoke with Francone about buying a plot from Calvary to bury his recently-deceased sister.  Francone referred Ly to

family service counselor Patricia Farmer.[1]  Ly already owned two adjacent plots at Calvary but wanted to reserve those plots for burial of his parents.  There were no available plots adjacent to Ly's pre-owned plots.

The contract of sale expressly permitted Ly to exchange and receive credit for the value of the two pre-owned plots against any plots of equal or greater value.  However, rather than exchange a plot, Ly wanted to retain the plots he owned.  Therefore, Ly purchased a non-adjacent plot in which to bury his sister.  Farmer drafted the contract as an "at-need" sale.

Later that day, Francone saw the Ly contract and suggested to Farmer that the transaction should have been treated as a "pre-need" sale by allowing Ly to exchange one of his existing plots for a plot for his sister and then allowing Ly to repurchase the original plot.  This would entitle Ly to a discount on his purchase and would entitle Francone to a commission on her sale.  Farmer replied that Francone's proposal was not the correct way to structure the sale.  Francone discussed the matter with another family services counselor.  They concluded that the sale could be treated as "pre-need."

---

[1]The family service counselors work on a rotating schedule. Each day one counselor receives all the commissions from the business transacted that day.  Thus, although Farmer completed Ly's paperwork, any commission from that sale belonged to Francone.

-

Francone contacted Ly and had him return to Calvary to revise the contract. With Ly's approval, Francone restructured the agreement so that Ly exchanged one of his existing burial plots for his sister's new plot. Francone then resold to Ly the burial plot that he had exchanged, which resulted in a discount for Ly and a commission for Francone.

Francone submitted the revised contract to Calvary. When Calvary's president discovered the Ly contract, he discharged Francone for violating a company rule and for defrauding the company. Calvary asserts that the rule is stated in the employment contract which expressly provides that commissions and discounts are paid only on "pre-need" sales and not on "at-need" sales.

Although its policies allowed customers credit for the value of pre-owned burial plots exchanged for plots of the same or greater value, the policies necessarily did not allow the type of transaction in which Francone engaged. Calvary had neither a progressive disciplinary process nor an employee handbook that expressly proscribed such procedures.

ANALYSIS

Code § 60.2-618(2) disqualifies a claimant from receiving unemployment benefits when discharged for misconduct connected with work.

> [A]n employee is guilty of "misconduct
> connected with his work" when he
> deliberately violates a company rule

-

> reasonably designed to protect the
> legitimate business interests of his
> employer, or when his acts or omissions are
> of such a nature or so recurrent as to
> manifest a <u>willful</u> disregard of those
> interests and the duties and obligations he
> owes his employer.

<u>Branch v. Virginia Employment Comm'n</u>, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978).

> The statutory term "misconduct" should not
> be so literally construed so as to effect a
> forfeiture of benefits by an employee except
> in clear instances; rather the term should
> be construed in a manner least favorable to
> working a forfeiture so as to minimize the
> penal character of the provision by
> excluding cases not clearly intended to be
> within the exception.

<u>Kennedy's Piggly Wiggly Stores, Inc. v. Cooper</u>, 14 Va. App. 701, 707-08, 419 S.E.2d 278, 282 (1992) (quoting 76 Am. Jur. 2d <u>Unemployment Compensation</u> § 77 (1992)).

"[T]he findings of the Commission as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."  Code § 60.2-625; <u>see</u> <u>Lee v. Virginia Employment Comm'n</u>, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).  However, whether an employee's conduct constitutes misconduct is a mixed question of law and fact.  <u>See</u> <u>Israel v. Virginia Employment Comm'n</u>, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988).

-

The evidence supports the VEC's finding that Calvary had no rule prohibiting the transaction that Francone structured for Ly. Although Calvary's administrator and Farmer testified that Francone's transaction violated the sales staff's professional standards, neither identified a rule that prohibited Francone's action or would have put Francone on notice that the Ly contract was prohibited by the cemetery's policy. Although Francone's employment contract provided that she would not receive a commission for "at-need" sales, the employment contract did not explicitly proscribe or prohibit the transaction. In fact, by providing for a customer discount and sales commission for "pre-need" sales, the contract encouraged sales persons to structure sales, if possible, as "pre-need" sales.

Additionally, Calvary acknowledged that Ly could have purchased a third plot as a "pre-need" sale if he had buried his sister in one of the pre-owned plots, even though the purchase was being made to accommodate an immediate need for a burial plot. Calvary also conceded that had the exchange taken place on one day and the repurchase have taken place on the next day, it would not have considered the transaction a violation of its policy. For the foregoing reasons, we find that the VEC did not err in ruling that Francone did not "deliberately violate[] a company rule." See Branch, 219 Va. at 611, 249 S.E.2d at 182.

-

Having determined that Francone did not deliberately violate Calvary's rule, our consideration turns to whether Francone's actions manifested a willful disregard of Calvary's best interests and the duties that Francone owed Calvary. See Kennedy's Piggly Wiggly, 14 Va. App. at 705, 419 S.E.2d at 281. By awarding commissions on "pre-need" sales, and by making "pre-need" sales advantageous to customers, Calvary created incentives for counselors to make "pre-need" sales which would benefit both the customer and family service counselors. In this situation, the type of transaction Francone executed was reasonably foreseeable. Calvary adopted no rule and had made no express effort to forbid it. Ly had already purchased two plots from Calvary and approved of Francone's revision of the contract governing his acquisition of a third plot. Although Francone restructured the sale to maximize her own benefit, the restructuring also benefited a valued client. Under these circumstances, we cannot say as a matter of law, that Francone willfully disregarded her employer's interests.

Accordingly, we uphold the VEC's ruling that Francone was not terminated for misconduct, and we affirm the judgment of the trial court.

Affirmed.

-