# CIRCUIT COURT OF FAIRFAX COUNTY

Hilda M. Corea DePalma

v.

Virginia Employment Comm'n
and Eric R. Capps, M.D., P.C.

January 18, 2007

Case No. CL 2006-10312

BY JUDGE RANDY I. BELLOWS

This matter comes before the Court on petitioner's Petition for Judicial Review of the Virginia Employment Commission's denial of her unemployment compensation benefits, Commission Decision 72983-C. On December 8, 2006, the Court heard oral argument on this matter. At the December 8, 2006, hearing the Court took the petitioner's petition under advisement. After careful consideration, the Court is now prepared to render its decision.

*Factual Background*

Petitioner does not challenge the Commission's findings of facts. In October 2000, petitioner began her employment with Dr. Eric R. Capps, M.D., as a dental assistant. Petitioner's employer permitted her to work between the hours of 8:00 a.m. and 5:00 p.m. Assistants were required to report to work fifteen to thirty minutes before their first appointment in an effort to prepare for the workday. Petitioner's employer used an electronic time clock to keep track of employees' hours worked.

According to both parties and the Commission, on April 23, 2004, petitioner arrived at work at 8:00 a.m. Being unable to open the door to her office,[1] petitioner waited until Dr. Capps arrived before petitioner could enter her office. Thus, petitioner clocked in at approximately 8:25 a.m. on April 23, 2004. At the end of her day, 1:00 p.m., petitioner manually changed her timecard from listing a start time for her workday as approximately 8:30 a.m. to a start time as 8:00 a.m. to reflect the time that petitioner was at the office and waiting for her employer to arrive to unlock the office doors. Petitioner also manually wrote that the number of hours worked on April 23, 2004, was five, in light of the 8:00 a.m. start time.

Petitioner's employer instituted a policy that employees could manually change their time cards by handwriting times and number of hours worked during a workday when the electronic time clock malfunctioned or incorrectly reported employees' time worked. Further, if employees worked through their lunch hour or after hours, they were to record the extra time on their time card and get a doctor to approve and sign the time card.

On April 26, 2004, petitioner's employer confronted her about the manual change of hours in her timecard. Petitioner responded to Dr. Capps' questioning by crossing out the handwritten five hours and replacing it with four and one half hours and telling Dr. Capps that he could compensate petitioner for four and one half hours rather than the five hours petitioner initially claimed.

On April 27, 2004, the day after Dr. Capps confronted petitioner concerning the handwriting on the timecard, Dr. Capps terminated petitioner. Subsequently, petitioner applied for unemployment compensation benefits and was denied such benefits. The basis for the denial of benefits was the finding that petitioner was terminated for misconduct, a disqualifying event. Specifically, a deputy of the Commission denied petitioner unemployment insurance benefits because the Commission found that "it [was] determined that [her] actions constitut[ed] misconduct within the meaning of [the Virginia Unemployment Compensation Act]." See Record of Proceedings *In re DePalma v. Virginia Employment Comm'n*, CL-2006-10312 19 (hereinafter "Record of Proceedings").

The petitioner filed a notice of appeal to her denial of benefits on June 25, 2004. An Appeals Hearing Examiner presided over petitioner's appeal on

---

[1] Approximately two weeks prior to April 23, 2004, petitioner surrendered her office keys at Dr. Capps' request. Dr. Capps also had the locks changed on the office and failed to provide petitioner with a new set of keys.

August 5, 2004, and evaluated the issue of whether the petitioner was discharged from her position with Dr. Capps for employee misconduct.

The Hearing Examiner made the following findings of fact:

On April 23, 2004, [the petitioner] arrived at work at 8:00 a.m. The owner and his wife arrived at 8:25 a.m., and they let her and two other employees in at that time. She clocked-in as soon as she entered the work area, at about 8:30 a.m. When she got off from work at 1:00 that day, she wrote "00" on her timecard to indicate she arrived at 8:00 a.m. and "500" indicating her hours worked. On Monday, April 26, 2004, after the owner confronted the claimant about the timecard, she wrote "4:30" on her timecard to indicate the corrected number of hours for which she should be paid. The next day, the owner discharged for falsifying her timecard [sic]. Prior to April 23, 2004, the claimant did not alter her timecard.

Record of Proceedings 40.

Ultimately, the Hearing Examiner ruled in favor of petitioner's receiving benefits, thereby overruling the determination of the deputy denying petitioner unemployment compensation. Citing *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 249 S.E.2d 180 (1978), the Hearing Examiner concluded that petitioner's actions in changing her timecard to reflect the true time that she arrived at work on April 23, 2004, did not amount to misconduct. *Branch* defines disqualifying misconduct as a deliberate violation of "a company rule reasonably designed to protect the legitimate business interests of his employer, or when ... acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer." *Branch*, 219 Va. at 611 (emphasis omitted). The Hearing Examiner focused on two primary facts in reaching its conclusion. First, the petitioner had not previously altered her timecard before April 23, 2004. Second, petitioner's employer expected petitioner to arrive at work fifteen to thirty minutes before the owner arrived. The combination of the fact that the petitioner had never previously changed her timecard, that the petitioner did in fact arrive at 8:00 a.m., and the fact that the petitioner was expected to arrive fifteen to thirty minutes before the owner and the owner arrived at 8:25 a.m., led the Hearing Examiner to conclude that the petitioner's actions did not constitute misconduct. According to the Hearing Examiner, "the claimant's belief that she was entitled to be paid from 8:00 a.m., appears to be reasonable. Whether she was required to be at work at

8:00 a.m. is irrelevant if, given the owner's testimony, she was to be at work 15 to 30 minutes before he got there and he arrived at 8:25 a.m." Record of Proceedings 41.

Subsequently, Dr. Capps filed a notice of appeal on September 3, 2004. The appeal hearing took place on July 10, 2006. Ultimately, the Commission reversed the Hearing Examiner's decision and concluded that the petitioner was terminated for misconduct and was consequently barred from receiving unemployment compensation benefits. Specifically, the Commission found that the petitioner's actions on April 23, 2004, constituted "time theft." Record of Proceedings 62. Even though the Commission recognized that petitioner only committed time theft once, the Commission stated that a one-time event may still be characterized as disqualifying misconduct. *Id.* at 63. The Commission focused on the fact that the petitioner changed her timecard "without permission and without advising anyone else." *Id.* The Commission emphasized the principle that "every employee owes the duty of honesty to the employer. Dishonesty in any form, such as falsifying an employment application, altering a doctor's note, embezzlement, or lying about the reason for an absence are all acts which have been held to constitute misconduct in connection with work." *Id.* Petitioner, pursuant to Va. Code Ann. § 60.2-625 (2006), filed a notice of appeal in this Court on August 15, 2006.

## Legal Discussion

Va. Code Ann. § 60.2-625 confers jurisdiction on this Court over the present matter. The statute states that "within thirty days after the decision of the Commission upon a hearing pursuant to § 60.2-622 has been mailed, any party aggrieved who seeks judicial review shall commence an action in the circuit court of the county or city in which the individual who filed the claim was last employed." Va. Code Ann. § 60.2-625. Further, the statute establishes the parameters of the present analysis. Under Va. Code Ann. § 60.2-625, "in any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."

Va. Code Ann. § 60.2-618(2)(a) states that a petitioner seeking unemployment compensation benefits will be disqualified from such benefits "if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work." The statute provides a non-exclusive definition of misconduct, including an employee's confirmed positive test for a non-prescribed controlled substance, an employee's false

statement concerning past criminal convictions, an employee's willful and deliberate violation of a standard or regulation of the Commonwealth which would render the employer liable, and chronic absenteeism or tardiness. Va. Code Ann. § 60.2-618(2)(b)(1)-(4).

In the instant matter, since the petitioner does not allege fraud or that the Commission's findings of fact are unsupported by the evidence, the precise legal issue before the Court is whether the petitioner's action in changing her time card to reflect the true time that petitioner arrived at work on April 23, 2004, constitutes misconduct under Virginia law and consequently disqualifies petitioner from unemployment compensation benefits.

In *Kennedy's Piggly Wiggly Stores, Inc. v. Cooper*, 14 Va. App. 701, 419 S.E.2d 278 (1992), the Virginia Court of Appeals announced a two-part definition of misconduct under Va. Code Ann. § 60.2-618(2). First, the conduct at issue must amount to a deliberate violation of a company policy or rule. Second, the actions or omissions at issue must be of such a nature or so recurrent as to manifest a willful disregard of the employer's interests and the duties and obligations the employee owes the employer. *Cooper*, 14 Va. App. 701, 419 S.E.2d 278. See also, *Duncan v. Data Servs. Am.*, 2000 Va. App. LEXIS 646 (Va. App. 2000) (restating definition of misconduct discussed in *Cooper*). Moreover, in *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 376 S.E.2d 808 (1989), the Court of Appeals states that "in order to constitute misconduct, the total circumstances must be sufficient to find a deliberate act of the employee which disregards the employer's business interests." Further, in *Garland v. Virginia Employment Comm'n*, 2000 Va. App. LEXIS 585 (Va. App. 2000), the Virginia Court of Appeals states that an employee's termination after numerous warnings by the employer concerning the employee's recurrent attendance problems, including tardiness to the workplace and leaving the workplace without his employer's permission, amounts to benefit-disqualifying misconduct.

*Analysis*

The petitioner's conduct in affirmatively changing her timecard to reflect the actual time that she arrived at her workplace on April 23, 2004, does not amount to disqualifying misconduct under Va. Code Ann. § 60.2-618(2)(b) or controlling case law. Although the Commission concluded to the contrary, the Court does not view petitioner's actions as a "deliberate violation

of a company policy or of such a nature or so recurrent as to manifest a willful disregard of the employer's interest and the duties and the obligations that the employee owes his employer."

The defendants contend that petitioner's sole act of handwriting a correction on her timecard without prior approval from her employer constitutes time theft and amounts to employee misconduct. This Court finds otherwise. Petitioner arrived at 8:00 a.m. to begin her workday and noted that fact on her timecard. While the better course of action might have been to consult her employer before noting the correct time of her arrival, the fact that she did not do so does not make this a matter of "time theft." Moreover, it was company policy to permit timecards to be corrected by employees when the time clock incorrectly recorded their time. Here, the timecard was also incorrect, albeit not due to a mechanical error, and the petitioner corrected it. The fact that the petitioner agreed to modify her time card after being confronted by her employer, does not, in the Court's opinion, constitute an admission of misconduct; rather, it appears to be simple acquiescence to her employer's concerns.

To put it another way, this is not an instance of a dishonest employee attempting to receive compensation for time not actually worked. Petitioner listed 8:00 a.m. as her start time because that is the time that petitioner arrived at work to begin her workday. Petitioner's employer *expected* her to arrive at work fifteen to thirty minutes before he did. On April 23, 2004, petitioner's employer arrived at work at 8:25 a.m. Thus, petitioner's action in arriving at work at 8:00 a.m. amounts to nothing more than petitioner's following her employer's orders. There was no "time theft" or employee misconduct.

Accordingly, the petitioner's Petition for Judicial Review of the Virginia Employment Commission's denial of her unemployment compensation benefits, Commission Decision 72983-C, is granted.

### Final Order

This matter comes before the Court on the Petitioner's Petition for Judicial Review of the Virginia Employment Commission's denial of her unemployment insurance compensation benefits. For the reasons stated in the accompanying Letter Opinion, this Court grants the Petitioner's Petition and reverses the decision of the Virginia Employment Commission denying the Petitioner unemployment insurance compensation benefits.