# CIRCUIT COURT OF ROCKINGHAM COUNTY

Linda N. Stamper

v.

Virginia Employment Commission
and Central Security Bureau, Inc.

September 10, 1999

Case No. 11544

BY JUDGE JOHN J. MCGRATH, JR.

This case comes to this court as a result of a judicial appeal from a decision of the Virginia Employment Commission, denying Linda Stamper unemployment benefits under Va. Code § 60.2-618(2). Stamper was terminated from her position at Central Security Bureau, Inc., on June 10, 1998. Shortly thereafter, Stamper applied for, and was granted, unemployment benefits subsequent to a telephone hearing with Deputy Commissioner McLaren of the Virginia Employment Commission. Central Security timely filed an appeal, and a hearing was held before an appeal examiner of the Virginia Employment Commission on August 6, 1998. The appeal examiner affirmed Deputy Commissioner McLaren's decision. Central Security again filed a timely appeal, and the Virginia Employment Commission reversed the earlier decisions and denied Stamper unemployment benefits, stating that Stamper's discharge was a result of "misconduct connected to her work." Stamper has filed a timely appeal to this court.

Pursuant to Virginia Code § 60.2-625, "in any judicial proceeding … the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Va. Code § 60.2-625. The issue of whether an employee's conduct constitutes "misconduct" is a mixed question of fact and law, and such mixed questions are reviewable by this court. See *Israel v.*

*V.E.C.*, 7 Va. App. 169, 172, 372 S.E.2d 207 (1998) (citing *Blake v. Hercules, Inc.*, 4 Va. App. 270, 356 S.E.2d 453 (1987)).

Considering the evidence in the light most favorable to the findings of the Virginia Employment Commission, (see *V.E.C. v. Fitzgerald*, 19 Va. App. 491, 452 S.E.2d 692 (1995)), the essential facts are as follows. Linda N. Stamper was employed as an "office manager" for Central Security Bureau, Inc., of Harrisonburg, Virginia, from January 30, 1998, to June 10, 1998. (V.E.C. opinion, 1.) Stamper's duties included scheduling security guards to work for various clients in the area, as well as compiling initial paperwork for new security guards, providing them with uniforms and name tags, and performing various other administrative duties. (Tr. 16.) After working for a time, Mrs. Rowe, the secretary/treasurer of Central Security (and wife of the owner), had a talk with Stamper about some "abrupt" behavior and a negative attitude that Stamper was displaying. (Tr. 6.) After explaining that the stress of learning a new job and still taking classes had caught up to her, Stamper took two days off at the end of March and returned with a much more positive attitude. (Tr. 6.) During the week of April 10, 1998, while Rowe was out of the office, an "incident" occurred between Stamper and a co-worker, Clota Rodeffer. (V.E.C. opinion, 2.) This incident occurred when a client called the office and requested additional security. Rodeffer offered to help Stamper find workers, and Stamper, in an outburst, told her that if she (Rodeffer) wished to do her job, she could come and sit behind her desk. (Tr. 42.) Rowe was informed of the incident and spoke to both employees about the need for them to get along in the office. (Tr. 7.) A few weeks later, again when Rowe was out of the office, Stamper and Rodeffer had another unpleasant encounter. (Tr. 7.) This occurred when Rodeffer put an application that needed to be processed into Stamper's basket. Stamper did not like the attitude or actions of Rodeffer and thereafter submitted her resignation. (Tr. 7.) Rowe spoke with Stamper and Stamper voiced her concerns that she did not like the way Rodeffer treated her and she did not feel she could work with her. Rowe convinced Stamper to stay at her job. (V.E.C. opinion, 3.)

Aside from these incidents with Rodeffer, Central Security experienced other problems with Stamper's job performance. On May 18, Rowe spoke with Stamper about leaving the office early without permission; after the talk, Stamper never did it again. (Tr. 34.) On May 27, when a guard went to the office to see Mr. Rowe, Stamper allowed him into the back office without announcing him and then informed the guard that Rowe was too busy to see him, without first checking with Mr. Rowe. (Tr. 7.) Mr. Rowe discussed this incident with Stamper, and after that day, it never occurred again. (Tr. 34.) During the Memorial Day weekend, there was a problem with Stamper

scheduling some guards for shifts over 12 hours, which was against company policy. When she was questioned about this, she explained that she had no other choice because the demand for security personnel was so high that weekend. (Tr. 20.)

Finally, on Friday, June 5, 1998, Rowe had a meeting with Stamper in which she voiced three major concerns: (1) Stamper's lack of a positive attitude, (2) Stamper's loyalty and commitment to the company, and (3) Stamper's poor working relationship with Rodeffer. (Tr. 13-14.) Stamper replied that she would try to be more positive. (Tr. 14.) As far as being more loyal, Stamper told Rowe that she felt "caught in the middle" (between Rowe and other employees) and did not want to tattle on her co-workers; however, Stamper never said she would not cooperate, nor did she say she would not be loyal. (Tr. 57.) Rowe stated that she did not want Stamper to "tattle" on her co-workers. (Tr. 57.) With regard to Rowe's third concern, Stamper replied that she was uncertain as to how she would react to Rodeffer. (Tr. 59.) At no time between January and June did Rowe ever specifically warn Stamper that her job was in jeopardy. (Tr. 25.) Following the June 5 meeting, there were no more problems with Stamper's behavior or job performance; however, on June 10, Rowe fired Stamper, after hiring another employee to take her place.

*Legal Discussion*

Virginia Code § 60.2-618 states that an employee will be ineligible for unemployment benefits if he or she is separated from his or her job because "he has been discharged for misconduct connected with his work." See Va. Code § 60.2-618. The controlling case in interpreting this area of the law is *Branch v. V.E.C.*, 219 Va. 609, 249 S.E.2d 180 (1978). In *Branch*, the Supreme Court of Virginia set out a two-prong test to determine if an employee was guilty of "misconduct connected with his work." The first prong is whether he "*deliberately* violat[ed] a company rule." The second prong asks whether "his acts or omissions are of such a nature or so recurrent as to manifest a *willful disregard* of those interests and the duties and obligations he owes his employer." *Branch v. V.E.C.*, 219 Va. 609, 249 S.E.2d 180 (1978). Furthermore, "in order to constitute misconduct, the total circumstances must be sufficient to find a deliberate act of the employee which disregards the employer's business interest." *V.E.C. v. Gantt*, 7 Va. App. 361, 376 S.E.2d 808 (1989).

The employer bears the burden of proving misconduct, and, absent a showing of either one of the *Branch* prongs, the employee is not guilty of "misconduct in connection with his work." *Kennedy's Piggly Wiggly Stores,*

*Inc. v. Cooper*, 14 Va. App. 701, 419 S.E.2d 278 (1992). Moreover, the employer must show that the employee's poor performance did not result merely from inexperience or an inability to perform the task assigned. *Whitt v. Ervin B. Davis & Co.*, 20 Va. App. 432, 457 S.E.2d 779 (1995).

In the case now before this court, the respondents contend that Stamper's actions constituted misconduct within the meaning of the Virginia Code. This court does not agree with that contention and thus reverses the decision of the Virginia Employment Commission and reinstates Stamper's unemployment benefits.

In order to deny a claimant benefits under this code section, the facts must *clearly* demonstrate misconduct. *Kennedy's Piggly Wiggly Stores, Inc.*, 14 Va. App. 701, 707, 419 S.E.2d 278, 282 (1992). These facts do not accomplish that task. In order for these facts to clearly demonstrate such misconduct, the employer has the burden of proving that the claimant willfully or deliberately acted with disregard to the employer's benefit or so as to violate a company rule reasonably designed to protect the legitimate business interests of his employer. Central Security has simply failed to carry that burden. Central Security and the Virginia Employment Commission's opinion have both stated that the ultimate reason for Stamper's termination was her response to the questions posed to her at the June 5, 1998, meeting. Her responses at this meeting do not rise to the level of willful disregard or a deliberate violation of company policy. When asked if she could have a more positive attitude, Stamper replied, "I'll try." (Tr. 14.) When asked about being more loyal, Stamper did not refuse, nor did she say she would not cooperate with the company policy, she merely stated that she felt "caught in the middle" and did not want to "tattle" on her co-workers. (Tr. 14.) Although Central Security seems to find this to be very damaging, Rowe even stated during the Virginia Employment Commission's hearing that she did not want Stamper to "tattle" on anyone, (Tr. 57); therefore, her statement could not have been taken to be in willful disregard of the employer's request. Finally, when Rowe asked Stamper about getting along better with Rodeffer, Stamper replied that she was uncertain as to how she would react to Rodeffer in the future. (Tr. 14.) Once again, an uncertain answer such as this cannot reasonably be taken as a *willful* disregard or *deliberate* violation of company policy. Under these facts, the respondents have failed to prove that Stamper's actions *"clearly* demonstrate misconduct" as is required in *Kennedy's Piggly Wiggly Stores, Inc., supra.*

Respondent V.E.C. contends that although the meeting on the fifth was the final culmination of the problems regarding Rodeffer and Stamper's attitude, Stamper's termination was also based on her previous behavior.

Although this may be true, her previous problems with Central Security were mere performance issues, and after being discussed, the problems did not arise again. The Virginia Court of Appeals has stated that "the record must establish that poor performance does not result merely from inexperience or inability to perform the task assigned." See *Whitt v. Ervin B. Davis & Co.*, 20 Va. App. 432, 437, 457 S.E.2d 779, 781 (1995) (citing *Borbas*). The problems Central Security experienced with Stamper (such as scheduling over twelve-hour shifts and failing to announce a visitor) were mere performance issues, and after they were discussed with Stamper, the incidents did not occur again. The problems arose due to inexperience and lack of proper training and/or supervision, not a willful disregard for company policy. This is evidenced by the fact that the problems did not occur again after they were brought to Stamper's attention. The only other issue with Stamper was a problem with her leaving work early without permission; however, this occurred in mid-May, and after a talk with Stamper, the problem never occurred again. Furthermore, since Central Security discussed the problem with Stamper and then allowed her to continue working, apparently satisfied that it would not occur again, this cannot possibly be a basis for terminating her on June 10.

Finally, Respondent V.E.C. contends that *Helmick v. Martinsville-Henry County Econ. Dev. Corp.*, 14 Va. App. 853, 421 S.E.2d 23 (1992), is most analogous to the case at hand; however, upon a closer reading of this case, this court finds the two cases to be quite different. In *Helmick*, while it is true that the claimant and the respondent had a personality clash similar to the one at hand, Helmick's actions did rise to the level of willful disregard and deliberate violation, while Stamper's actions in the present case did not. In *Helmick*, the personality clash was between the claimant and a superior officer in the company; because of this, when the superior officer requested that Helmick do certain things, she directly disobeyed him. *Helmick*, at 855. For instance, when Helmick was instructed to write a memorandum from the director of the company, her superior, to accompany an article that would be published in a magazine, Helmick instead wrote the memorandum and signed it with her own name, in *direct* violation of her instructions. *Id.* at 857. Furthermore, when asked to perform various other tasks, Helmick would refuse (*Id.* at 856) or do the task in a way that was directly contrary to what she was instructed. *Id.* at 856-57.

The actions of Helmick were quite different from Stamper's in the present case. Never once did Stamper directly violate a request by a superior officer. In fact, Rowe even stated that after talking with Stamper about some of her actions, the problems did not arise again. Even after the final meeting on June 5, 1998, when Rowe asked Stamper to get along better with Rodeffer, Stamper

did not refuse, she simply stated she was uncertain about how she would react to Rodeffer. Furthermore, between that meeting and the termination date of June 10, 1998, there were no further incidents between the two co-workers. Clearly, Stamper's actions in this case did not rise to the level of Helmick's.

In reality, this termination was based on the grounds of Stamper having a rather acerbic and volatile personality and the fact that she obviously had a personality conflict with her fellow employee. This clearly did not make for a pleasant or efficient work environment, but Stamper's inability to improve her pleasantness and to get along with a co-worker is not the type of misconduct considered by the legislature as a basis for denying unemployment benefits.

Since Central Security has failed to carry its burden of *clearly* demonstrating a *willful disregard* or *deliberate violation* of company policy, the decision of the Virginia Employment Commission will be reversed and the unemployment benefits originally granted to Stamper should be reinstated.

The Clerk of the Court is directed to send certified copies of this order to Kenneth R. Moran, Esq., counsel for Petitioner, Gregory T. St. Ours, Esq., counsel for Respondent, Central Security Bureau, and Donald G. Powers, Assistant Attorney General, counsel for Respondent, Virginia Employment Commission.