Richmond

## VERNON BRANCH, JR.

### v.

## VIRGINIA EMPLOYMENT COMMISSION AND VIRGINIA CHEMICAL COMPANY

November 22, 1978.

Record No. 770306.

Present: All the Justices.

*Edward J. Pontifex,* for appellant.

*Robert J. Barry, Assistant Attorney General (Anthony F. Troy, Attorney General; Gilman P. Roberts, Jr., Assistant Attorney General,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

By decision dated June 16, 1976, the Virginia Employment Commission affirmed the Appeals Examiner's denial of a claim for

unemployment compensation filed by Vernon Branch, Jr., *sub nomine* Vernon L. Prayer. The Commission found that claimant's employer, Virginia Chemical Company, had "promulgated a policy to all employees that any employee receiving three garnishees [sic] within twelve months of each other is automatically terminated"; that claimant had "deliberately violated" that policy; and that "his discharge was for misconduct in connection with his work." By final judgment order entered upon appeal November 5, 1976, the trial court ruled that the findings of the Commission were supported by the evidence and affirmed the Commission's decision.

We granted claimant a writ of error to consider two issues: first, whether the Commission erred in applying the rule that "where an employee permits excessive and multiple garnishments to be issued against his wages in violation of a company rule, such sufferance constitutes . . . misconduct within the contemplation of an unemployment compensation statute"; and second, whether the Commission's finding that claimant had violated the company rule was supported by the evidence.

The Virginia Unemployment Compensation Act, Title 60.1, Code of Virginia, requires employers to finance a fund to pay benefits to employees who have become unemployed through no fault of their own. An employee is "disqualified for benefits . . . if the Commission finds . . . [he] is unemployed because he has been discharged for misconduct connected with his work." Code § 60.1-58(b) (Repl. Vol. 1973).

This is the first occasion we have had to construe this language in the statute. In our view, an employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer. *See generally*, 76 Am. Jur.2d *Unemployment Compensation* § 52 (1975). Absent circumstances in miti-

gation of such conduct, the employee is "disqualified for benefits", and the burden of proving mitigating circumstances rests upon the employee. *See Western Electric* v. *Review Bd. of Ind. Emp. Sec. Div.,* 147 Ind. App. 645, 263 N.E.2d 184 (1970).

■ The record shows that claimant was familiar with the company rule; that he was repeatedly warned that it would be invoked; and that he offered no evidence in mitigation of its breach. On appeal, he argues that the conduct underlying the breach was not conduct "connected with his work" and, therefore, was not "misconduct" within the intendment of the statute. In several cases entailing similar facts, the Commission has ruled otherwise, *see, e. g., Solomon Black* v. *Airport Transport, Inc., of Virginia,* Commission Decision No. 4074-C (July 25, 1963), and when it appears that the General Assembly has acquiesced in the Commission's construction of the statute, "such construction is entitled to great weight with the courts." *Dan River* v. *Unemployment Comm.,* 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954).

■ We believe the Commission's construction is substantially correct. Ordinarily, the way an employee manages his debts is a personal and private matter unconnected with his work. It is a different matter, however, when he mismanages his debts in a manner which impairs the status or function of the employer-employee relationship to the employer's detriment. When an employee forces his creditors to garnish his earnings, he exposes his employer to continuing service of judicial process, complicates his administrative burden, and increases the cost of conducting his business. Moreover, when the employer withholds a portion of a paycheck, the depressing effect on employee morale tends to erode the quality of the work product.

We are of opinion that the conduct of an employee which results in garnishment is conduct connected with his work and where, as here, such conduct is recurrent,* knowingly violative of a company rule, and unexcused by mitigating circumstances, it constitutes misconduct within the intendment of the statute. With respect to the first issue, then, we find no error below.

---

* "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." Code § 34-29(f) (Cum. Supp. 1978).

■ The judgment will be reversed, however, because it appears from the face of the record that the evidence did not support the Commission's finding that claimant had violated the company rule.

That rule authorized termination of employees who suffered three garnishments "within 12 months of each other". While this wording arguably supports more than one interpretation, the rule must be construed most strictly against its author and most liberally in favor of the employee. Three garnishments may fairly be said to be "within twelve months of each other" when the third occurs within twelve months of the first. From the testimony of the employer's manager of employee relations, the Commission found that "[t]he employer was required to garnish the claimant's wages on August 27, 1974, July 24, 1975, and January 6, 1976." The Commission then found that "this claimant deliberately violated a company policy". The first finding, based upon the only evidence touching the question, was correct. But, since the third garnishment occurred nearly 17 months after the first, the second finding was patently incorrect. The factual findings of the Commission are binding in judicial proceedings only when "supported by evidence". Code § 60.1-67 (Repl. Vol. 1973).

The trial court erred in holding that the factual finding upon which the Commission rested its decision was supported by the evidence. The November 5, 1976 judgment order will be reversed and the case will be remanded. The trial court will enter a new order vacating its judgment and remanding the case to the Commission for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

COMPTON, J., dissenting in part.

I agree with the majority's decision on the first issue. But I disagree with their second conclusion because, in my opinion, the evidence amply supports the Commission's finding, and the trial judge's determination, that the claimant had violated the employer's company-wide rule. The flaw in this decision, in my opinion, is

that my brethren have made a finding of fact during the course of appellate review and have disregarded a contrary and binding factual determination already made below.

As a part of its investigation of the facts, the Commission first had to determine what language was contained in the company rule. No copy of a written statement of the rule was offered in evidence at the hearing. Instead, the Commission had to rely on the oral testimony of the employer's Manager of Employee Relations to determine just what the rule provided. The witness testified on the subject as follows:

> Virginia Chemicals has had since March of 1969, a policy for handling excess garnishees. In essence the policy is that if an employee receives three garnishees within twelve months of each other he is automatically terminated. Each new employee is given a copy of this policy and he is given a written warning each step of the way. [The claimant] was garnisheed first on August 27, 1974. Eleven months later he was garnisheed July 24, 1975. He was garnisheed August 7, 1975 and this one was released by the store, but was not counted against him. He was garnisheed on September 24, 1975 and this was the same indebtedness as the one on July 24, 1975. As you are aware the law says you cannot discipline an employee for garnishees for the same indebtedness. And then on January 6, 1976 he was garnisheed again. So he was garnisheed one time, eleven months he was garnisheed again, and we disregarded the next two, six months after the second he was garnisheed the third. And on that basis in keeping with the policy he was terminated.

As a result of this testimony, the Commission found that the policy meant that a violation occurred if, as here, the employee suffers three valid garnishments, each not separated by more than twelve months. Such a conclusion is contrary to the majority's appellate finding that the three garnishments must all be within a twelve-month period.

After stating the "essence" of the policy, the witness demonstrated its meaning when he pointed out that the claimant "was garnisheed one time [August 27, 1974], eleven months he was garnisheed again [July 23, 1975], . . . six months after the second he was garnisheed the third [January 6, 1976]." These are the

precise three garnishments which the Commission and the trial court determined had constituted a violation of the company policy as it had determined the policy to be.

Thus it is obvious to me that the factual finding as to the provisions of the rule cannot be separated from the testimony relating to the operation of the rule. Plainly, the company witness meant when he said "three garnishees [sic] within twelve months of each other", that the rule was violated, not only when the three were within a twelve-month period, but also when the three were each not separated by more than twelve months. In sum, I think we are as bound by the finding below dealing with how the company rule operates in practice as we are by the finding of what the rule actually provided. The testimony relating to the employer's application of the rule was an integral part of the evidence which stated the language of the rule and should not have been disregarded on appeal.

But even when the finding below dealing with the employer's application of the rule is ignored, I still disagree with the conclusion reached by the court. The majority's decision is premised upon the presumption that an ambiguity exists in the clause "within twelve months of each other." I perceive no ambiguity.

The interpretation by my brethren renders the words "of each other" meaningless. To achieve the majority's result, it would have only been necessary for the company to provide for a violation if the employee received three garnishments "within twelve months." But it cannot be presumed that the scrivener of this employment policy used words aimlessly; no provision of the rule should be deemed superfluous unless it is plainly repetitious. *See Ames* v. *American National Bank of Portsmouth*, 163 Va. 1, 39, 176 S.E. 204, 214 (1934). When the clause is considered in its entirety, there is but one interpretation which gives meaning to all of the words and that interpretation was adopted by the Commission and the trial court. Since there is no ambiguity, the rule of construing a writing most strictly against its author has no application here.

Consequently, I believe the court below correctly decided all issues in the case and I would affirm.