COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


WELLS FARGO ALARM SERVICES, INC.
                                              OPINION BY
v.  Record No. 1051-96-2        JUDGE JAMES W. BENTON, JR.
                                              MARCH 25, 1997
VIRGINIA EMPLOYMENT COMMISSION and
 CLAUDE H. COLLIER, JR.


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Melvin R. Hughes, Jr., Judge

          James Emmett Anderson for appellant.

          Lisa J. Rowley, Assistant Attorney General
          (James S. Gilmore, III, Attorney General;
          W. Rand Cook; McCaul, Martin, Evans & Cook,
          on brief), for appellees.


     Wells Fargo Alarms Services, Inc., appeals from a decision

of the trial judge affirming a ruling of the Virginia Employment

Commission.  Wells Fargo argues that (1) the trial judge erred in

affirming the commission's finding that Claude H. Collier's

conduct did not constitute misconduct for purposes of Code

§ 60.2-618(2); (2) Wells Fargo did not condone Collier's conduct;

(3) the commission erred in denying Wells Fargo's request to

present additional evidence; and (4) the trial judge erred in

refusing to remand the case to the commission for a hearing to

determine whether the commission's decision was procured by

extrinsic fraud.  For the reasons that follow, we affirm the

trial judge's decision.

Wells Fargo sells and installs fire alarms and security systems. Claude H. Collier began his employment as a sales representative in Wells Fargo's Richmond office on September 9, 1991. Collier was discharged on April 22, 1994, for failure to follow company policy, and he filed a claim for unemployment compensation. The commission's deputy granted Collier compensation. Wells Fargo appealed from that decision.

The evidence at the appeals examiner's hearing proved that in 1992 Collier conducted extensive negotiations to obtain Allied Signal as a Wells Fargo customer. Allied Signal had been serviced by one of Wells Fargo's competitors for twenty-five years. When Collier learned that Allied Signal no longer wanted to use the services of the competitor, he began negotiating a transaction valued at $500,000. Because Collier was a relatively new employee, his "branch manager . . . was fully aware of every transaction that [he] was going through in negotiating" with Allied Signal. Collier testified that "Allied [Signal] was in the process of revamping [its] entire system" and would switch to Wells Fargo only "at a certain price." Collier also testified that after he showed his branch manager the documents about the cost of the job and informed him about the amount Allied Signal was willing to pay, his branch manager said, "Well, when we do a takeover from another company, [it] can't go in as a direct sale. It has to go in as a leased system because of the investment."

Collier further testified that a contract was not prepared because his branch manager stated, "We will not enter into a contract at this time because we don't know how this thing is [going to] wind-up."

Collier testified that because of the structure of the transaction his branch manager had to obtain the approval of the district sales manager, Bill Winter. Collier also testified that he and the branch manager informed Winter of the transaction, sent him information by facsimile, and generally kept him informed. Collier testified that Winter approved the transaction. Collier further testified that after the transaction was approved, the following occurred:

> I was called in to say, "Okay. This is how the job's gonna go." [The branch manager] said, "We will go with that figure." And that figure was $325,000.00 for the installation, which is money up front to Wells Fargo, and $40,000.00 to be paid to us annually. A purchase order was written from Allied Signal to Wells Fargo explaining exactly that.

Collier testified that the branch manager, the applications engineer, and the accounting coordinator, the individual who calculated Collier's commissions, also approved the transaction. Collier stated that three of his supervisors had to give their approval before he was paid.

Wells Fargo's representative at the hearing was Thomas N. Griffin, Jr., the current general manager for Wells Fargo's Washington D.C. office and a former general manager of the

Richmond office. Although Griffin had little personal knowledge of Collier's case, he testified that "on a job this large, it would be very unusual for folks at much higher places not to know about it" and that "it's fair to say . . . the job could not have been approved without . . . folks above [Collier] knowing about it." He also testified "that normally when we takeover something [from a competitor], we take over with a lease . . . [because] you try to go in with as an attractive . . . composition as you can, in order to make the fellow feel it is an attractive alternative to what he already has." He further testified that "the general manager must approve sales commissions."

After Wells Fargo's auditors raised questions regarding the transaction, a meeting was held among Collier, other employees at the Richmond branch, lawyers, and corporate officials. Collier testified that he and another employee were "instructed not to say anything" at that meeting.

Wells Fargo contended that Collier improperly treated the transaction, which should have been a lease-purchase arrangement, as a lease. Wells Fargo argued that, as a consequence, Collier was overpaid $11,570 in commissions and $5,021 in bonuses because under its commission policy sales representatives receive a greater commission for a lease than a sale. Wells Fargo also asserted that Collier failed to follow company policy because he used purchase orders that were submitted by Allied Signal and failed to execute Wells Fargo's approved, written contract in

making the transaction with Allied Signal.

Based upon evidence at the hearing, the appeals examiner found that Collier "did not misrepresent any facts to [Wells Fargo]" and that the "[m]isrepresentations were made by [Collier's] superiors." The appeals examiner affirmed the decision of the deputy that Collier was qualified to receive unemployment compensation.

Wells Fargo appealed that decision and requested that the commission take additional evidence. The commission denied Wells Fargo's request to take additional evidence. In ruling on the merits of the appeal, the commission found that Collier's "involvement in the [Allied Signal] transaction was monitored by [Collier's] superiors, including his supervisor, the accounting coordinator, and the branch manager [and that the] transaction was also coordinated by the branch manager." The commission further found that Collier "believed that approvals for certain aspects of the transaction had been obtained from the district sales manager." The commission also noted that Wells Fargo "presented no evidence of the policies which [Collier] is alleged to have violated." Although the commission stated that Collier demonstrated poor judgment by remaining silent as instructed at the meeting with Wells Fargo's lawyers, the commission found that "this alone is not sufficient to establish that [Collier] breached his duty of loyalty or honesty to the company." In view of the involvement of Collier's supervisors, the commission

concluded that Wells Fargo "did not present sufficient evidence to establish that [Collier] was guilty of misconduct connected with work."

Wells Fargo appealed to the circuit court. After the trial judge affirmed the commission's findings, Wells Fargo filed a timely appeal to this Court.

## II.

Wells Fargo first argues that the commission erred in finding that Wells Fargo failed to prove Collier engaged in misconduct. We disagree.

"Initially, we note that in any judicial proceedings 'the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citations omitted). In accord with our usual standard of review, we "consider the evidence in the light most favorable to the finding by the Commission." Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987).

> Furthermore, the following principle is well established:
> [A]n employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.

Branch v. Virginia Employment Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978).  "Whether an employee's behavior constitutes misconduct, however, is a mixed question of law and fact reviewable by this court on appeal."  Israel, 7 Va. App. at 172, 372 S.E.2d at 209.

Wells Fargo argues that Collier violated its policies by structuring the Allied Signal transaction as a lease and by failing to use an approved Wells Fargo contract in the transaction.  We agree with the commission's finding that Wells Fargo "presented no evidence of the policies that [Collier] is alleged to have violated."  Moreover, the evidence proved that when Collier began negotiations with Allied Signal, he reported to his branch manager.  Collier described the details of the negotiations to the branch manager and thereafter followed the instructions given to him by the branch manager.  The evidence further proved that the details of the transaction were reported to the district sales manager, who also approved the transaction.  Thus, even if Collier violated company policy, the evidence proved that Collier's conduct was at all times authorized and directed by his superiors.  Because Collier was following the instructions of his immediate supervisor, Collier's deviation from the rule was authorized.

Although misconduct may be established by proving "an act or omission showing willful disregard of the employer's interest," Branch, 219 Va. at 611, 249 S.E.2d at 182, we cannot ignore the

factual circumstances and say as a matter of law that an employee's conduct is not excused when the employee follows a supervisor's orders to deviate from a rule. The commission found and the evidence proved that the transaction, which involved the transfer of potentially profitable business from a competitor, was approved by Collier's immediate supervisor and also Wells Fargo's district manager. Collier's supervisors' approval could only have suggested to Collier that he was advancing Wells Fargo's interests. Therefore, we cannot say that the record necessarily proved that Collier engaged in misconduct. Accordingly, we hold that the evidence supports the commission's decision.

### III.

Wells Fargo next asserts that Collier failed to prove that Wells Fargo condoned Collier's conduct. Because Wells Fargo failed to prove that Collier engaged in misconduct, the burden never shifted to Collier to introduce evidence in mitigation. See Virginia Employment Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989). Therefore, we need not consider the issue of condonation, because the commission properly declined to rule on that issue.

### IV.

Wells Fargo also argues that the commission erred in refusing to reopen the record for additional evidence. We

disagree.

> The commission's regulations state as follows:
>> The commission, in its discretion, may direct the taking of additional evidence after giving written notice of such hearing to the parties, provided:
>>
>> 1. It is shown that the additional evidence is material and not merely cumulative, corroborative or collateral, could not have been presented at the prior hearing through the exercise of due diligence, and is likely to produce a different result at a new hearing; or
>>
>> 2. The record of proceedings before the appeals examiner is insufficient to enable the commission to make proper, accurate, or complete findings of fact and conclusions of law.

16 VAC 5-80-30(B) (formerly VR 300-01-08 § 3(B)).

After the hearing, Wells Fargo sought to introduce before the commission (1) "documents pertaining to an unsuccessful wage claim which . . . [Collier] perfected with the Virginia Department of Labor and Industry," and (2) "documents supporting the contention of Wells Fargo that [Collier] was discharged for cause." Wells Fargo stated that it failed to introduce the evidence at the hearing because (1) the "bifurcation of duties [within Wells Fargo's management structure] . . . prevented all interested corporate officials at Wells Fargo . . . from having any direct knowledge of all ongoing employment matters concerning [Collier];" (2) at the time the hearing was scheduled, the Wells Fargo official who coordinated the hearing with the commission was unaware that Wells Fargo's key witnesses would be

- 9 -

unavailable; and (3) the Wells Fargo employee who appeared at the hearing had, at best, second-hand knowledge of the facts of this case.

Finding that "the additional documents and other evidence could have been presented at the Appeals Examiner's hearing through the exercise of due diligence," the commission denied the motion to reopen the record. The commission also found that the record was adequate "to enable the Commission to make proper, accurate and complete findings of fact and conclusions of law." Because the evidence supports the commission's findings, we hold that the commission did not abuse its discretion in refusing to accept additional evidence. See Old Dominion Elec. Coop. v. Virginia Elec. and Power Co., 237 Va. 385, 394-98, 377 S.E.2d 422, 427-29 (1989).

V.

Wells Fargo further contends that the trial judge erred in refusing to remand the case to the commission for a hearing on Wells Fargo's claim of extrinsic fraud. Because the proffer was insufficient to establish a prima facie case of extrinsic fraud, we hold that the trial judge did not err.

Extrinsic fraud is "conduct which prevents a fair submission of the controversy to the court." Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983). Wells Fargo argues that Collier committed extrinsic fraud by concealing corporate records, acting in concert with his supervisor in a plan to deceive corporate

officials, and submitting documents to Allied Signal.  The trial judge found that "whether these matters involve extrinsic fraud is of no moment [because] [t]hey were covered extensively in the hearings which afforded Wells Fargo an opportunity to present its position on them."  The trial judge concluded that a remand was unnecessary because "Wells Fargo ha[d] not made out a prima facie case of extrinsic fraud as contemplated by Va. Code § 60.2-625 and Jones v. Willard, 224 Va. 602, 299 S.E.2d 504 (1983)."

The documents that Wells Fargo alleges Collier concealed were found in Collier's desk, at Well's Fargo's Richmond office, after August 25, 1994.  However, Collier had been discharged four months earlier, in April 1994.  Wells Fargo clearly had access to the documents after Collier's termination in April.  Thus, we cannot say that Collier engaged in conduct that prevented a fair resolution of the case.

For these reasons, the judgment is affirmed.

Affirmed.