COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Richmond, Virginia

VIRGINIA EMPLOYMENT COMMISSION

                                                             OPINION BY
v.        Record No. 1390-09-2              JUDGE D. ARTHUR KELSEY
                                                          JANUARY 12, 2010
KIMBERLY D. TRENT


                    FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                                 Margaret P. Spencer, Judge

              Elizabeth B. Peay, Assistant Attorney General (William C. Mims,
              Attorney General, on brief), for appellant.

              Martin Wegbreit (Central Virginia Legal Aid Society, on brief), for
              appellee.


       The Virginia Employment Commission denied a claim by Kimberly D. Trent for

unemployment benefits under Code § 60.2-618(2) because her employer fired her for

misconduct.  Trent appealed the VEC decision to the circuit court, which vacated the denial

order and reinstated the benefits.  Because the circuit court exceeded its authority in doing so, we

reverse and enter final judgment affirming the VEC decision.

                                                   I.

       Like the circuit court, we must "consider the evidence in the light most favorable to the

finding by the Commission."  Wells Fargo Alarm Svcs. v. Va. Empl. Comm'n, 24 Va. App. 377,

383, 482 S.E.2d 841, 844 (1997) (quoting Va. Empl. Comm'n v. Peninsula Emergency

Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987)).  "If the commission's

findings are supported by the evidence, they are binding on appeal."  McNamara v. Va. Empl.

Comm'n, 54 Va. App. 616, 624, 681 S.E.2d 67, 70 (2009) (citation omitted).

       The VEC record shows that Trent worked as a store manager for 7-Eleven, Inc.  One of

7-Eleven's workplace rules permitted employees to pay for products consumed while on duty

through a payroll deduction.  This "Employee Purchases" rule, as it was known, had specific

limitations:  "The Grocery Bill may only be used to purchase products that are consumed while

the employee is on duty."  The rule specifically prohibited using the "Grocery Bill" to purchase

alcohol, lottery and lotto tickets, gasoline, money orders, and any prepaid items such as phone

cards, Internet cards, and gift cards.  As the VEC explained:

> The purpose of the policy is to provide employees with a
> mechanism to purchase food they may then eat while on duty.
> Other activities, for example, drinking, smoking, driving a vehicle,
> talking on the telephone, using the Internet, etc., are not allowed
> while on duty, and no such mechanism is provided to allow
> employees to purchase those items through payroll deduction.

Trent was familiar with the "Employee Purchases" rule and, because she was a store manager,

was responsible for enforcing it.

A regional supervisor suspected Trent of violating the "Employee Purchases" rule.  He

ordered an audit of the store's surveillance videotape and discovered that Trent had violated the

rule by using the "Grocery Bill" to purchase a prepaid phone card while on duty.  After giving

Trent an opportunity to explain herself, 7-Eleven fired her for this violation.

Trent filed a claim for unemployment benefits with the VEC.  She acknowledged that

7-Eleven fired her for violating the "Employee Purchases" rule, but argued she should still be

eligible for benefits because the rule was "not reasonably designed to protect the legitimate

business interests of the employer."  She also claimed 7-Eleven inconsistently enforced the rule

and should have issued a warning upon discovering her first offense.

The VEC disagreed with each of Trent's arguments.  Examining the "Employee

Purchases" rule in the context of the operation of a convenience store like 7-Eleven, the VEC

found 7-Eleven had

> a legitimate business interest in regulating the activities of its
> employees during their scheduled work shifts.  Regularly
> scheduled meal breaks at a convenience store, such as the one at

issue in this case, may not be practical. Employees may have to take their meals in shorter breaks in between waiting on customers. The employer's policy furthers the employer's interest in ensuring that employees are able to take what sustenance is necessary during the workday. To do so, the employer allows employees the convenience of not having to have cash on hand to make such purchases and to use, instead, a deduction from their paycheck.

However, the types of purchases that are not permitted would represent activities that the employer would have a legitimate business interest in prohibiting while at work. Such activities would impair or interfere with the employees' ability to perform their duties. . . . An equally important requirement under the policy is that employees consume the products they purchase by payroll deduction "while on duty." Alcohol, cigarettes, and phone cards, are products which the employer would have a definite business interest in prohibiting employees from "consuming" at work, regardless of their value.

The purchase of a telephone card, to be "consumed" while on duty could only entail the use of that card while on duty. The fact that the claimant testified she had no intention of using that card while on duty does not help her case, since purchasing a product no[t] for her own consumption at work was also a violation of the policy.

After finding Trent "knew and understood the policy," the VEC held 7-Eleven had "made out a

*prima facie* case of misconduct."

The VEC then addressed Trent's mitigation arguments. No evidence proved by a

preponderance, the VEC found, that 7-Eleven failed to enforce the rule consistently. And

nothing in the "Employee Purchases" rule prohibited 7-Eleven from enforcing it by terminating,

rather than warning, employees upon discovery of the first offense. For these reasons, the VEC

denied Trent's claim for unemployment benefits under Code § 60.2-618(2).

Trent appealed to the circuit court seeking judicial review of the VEC decision denying

her unemployment benefits. The circuit court held Trent "did violate a company rule" but the

VEC erred in enforcing it because "the record is devoid of evidence from the employer as to

what legitimate business interest the rule serves." The court then concluded: "Although the

Commission offered some business interest protected by the rule, the Commission's function is

- 3 -

not to provide the business justification, but rather, to evaluate whatever business justification is provided, which in this case was absent." Given its holding, the circuit court did not address whether the VEC properly rejected Trent's mitigation arguments.

## II.
### A. STANDARD OF JUDICIAL REVIEW

By statute, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-625(A). This statutory standard of judicial review does not invite a reviewing court to examine the administrative record *de novo* and to reweigh the possible inferences that could be drawn from it. Instead, a court can overturn VEC factfinding "only if, in considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Craft v. Va. Empl. Comm'n, 8 Va. App. 607, 609, 383 S.E.2d 271, 273 (1989) (emphasis in original) (citations omitted). This deferential standard applies not only to the historical facts themselves, but also to the inferences implicated by those facts.

Equally important, a reviewing court cannot "substitute its own judgment for the agency's on matters committed by statute to the agency's discretion." Boone v. Harrison, 52 Va. App. 53, 62, 660 S.E.2d 704, 708 (2008). Instead, "when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). "This standard recognizes the larger premise that, before any legal question can be answered, an *a priori* question must first be asked — who has the authority to decide. It is the one question that precedes all others." Boone, 52 Va. App. at 62, 660 S.E.2d at 708.

### B. MISCONDUCT BAR TO UNEMPLOYMENT BENEFITS

On appeal, the VEC argues the circuit court erred as a matter of law in reversing its finding that 7-Eleven discharged Trent for misconduct. We agree.

The legislature intended unemployment benefits to be paid only to those who find themselves unemployed "without fault on their part." Israel v. Va. Empl. Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). Furthering this policy goal, Code § 60.2-618(2)(a) prohibits benefits "if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work."

Among other things, misconduct involves an intentional violation of "a company rule reasonably designed to protect the legitimate business interests" of the employer. Brady v. Human Res. Inst., 231 Va. 28, 32, 340 S.E.2d 797, 799 (1986) (quoting Branch v. Va. Empl. Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978)). The very adoption of a rule by an employer "defines the specific behavior considered to harm or to further the employer's interests." Va. Empl. Comm'n v. Gantt, 7 Va. App. 631, 634, 376 S.E.2d 808, 811, aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989). "*By definition*, a violation of that rule disregards those interests." Id. (emphasis added).

The employer's rule, of course, must advance "legitimate" business interests. Brady, 231 Va. at 32, 340 S.E.2d at 799 (citation omitted). To be legitimate, however, an employer's rule need not be a model of workplace governance or aspire to what some might view as best business practices. It need only be a reasonable effort by an employer to manage its workforce and to enforce its own expectations of workplace order. In this context, legitimate simply means *not* illegitimate. A rule is illegitimate when it appears to be a pretextual policy used by an employer as a subterfuge for firing employees without incurring the collateral costs associated with unemployment benefits. See Schmidgall v. FilmTec Corp., 644 N.W.2d 801, 805 & n.5

(Minn. 2002) (holding the employer's rule was not "facially unreasonable" or "used to circumvent an employer's legal obligations"); Ford Motor Co. v. U.C.C., 191 Va. 812, 822, 63 S.E.2d 28, 32 (1951) (finding the Minnesota unemployment compensation statute "substantially the same" as its Virginia counterpart).[1]

Consistent with these principles, the VEC found 7-Eleven's "Employee Purchases" rule served legitimate business interests. The rule governed employees consuming store products *while on duty* and paying for them through a payroll deduction. The legitimacy of 7-Eleven's interest in limiting the scope of the rule is obvious: Some products (like alcohol, tobacco, phone cards, and the like) should *not* be consumed while an employee is on duty and, thus, should not be paid for through the payroll deduction system. Nothing in the text of the "Employee Purchases" rule or in its application suggested 7-Eleven used the rule as a subterfuge for cutting off a discharged employee's right to unemployment benefits. See generally Code § 60.2-529 (factoring employer's claim experience into its applicable unemployment tax rate).

Because the VEC has statutory authority "to draw reasonable inferences from the evidence," McNamara, 54 Va. App. at 626, 681 S.E.2d at 72, the VEC may infer the legitimacy of the employer's interest from an examination of the policy itself. Inferences, after all, "are elemental ingredients of the fact finding process." Agee v. Commonwealth, 40 Va. App. 123, 129, 578 S.E.2d 68, 70 (2003) (citation omitted). "An inference . . . permits a finder of fact to conclude the existence of one fact from the proof of one or more other facts." Id. A reviewing court can reverse such factfinding "only if, in considering the record as a whole, a reasonable

---

[1] See also Caterpillar, Inc. v. Dep't of Empl. Sec., 730 N.E.2d 497, 505 (Ill. App. Ct. 2000) (noting, where unemployment benefits statute defines employee misconduct as "deliberate and willful violation of a reasonable rule or policy" of the employer, the employer does not need to "prove the existence of a reasonable rule or policy by direct evidence" because "the court may reach that determination by a commonsense realization"); Blake v. Commonwealth, 425 A.2d 43, 45 (Pa. Commw. Ct. 1981) (focusing on the "common sense realization" that employee disregarded the employer's legitimate interests).

mind would *necessarily* come to a different conclusion." Craft, 8 Va. App. at 609, 383 S.E.2d at 273 (emphasis in original) (citations omitted). No such showing has been made here.

C. TRENT'S MITIGATION DEFENSE

Trent argues the circuit court, even if it erred in finding no misconduct, still reached the right result because the VEC erroneously failed to credit her evidence of mitigation. We disagree.

If an employer presents *prima facie* evidence of misconduct, the burden shifts to the claimant to prove "circumstances in mitigation of such conduct." Branch, 219 Va. at 611-12, 249 S.E.2d at 182. See also Gantt, 7 Va. App. at 635, 376 S.E.2d at 811. "Evidence of mitigation may appear in many forms which, singly or in combination, to some degree explain or justify the employee's conduct. Various factors to be considered may include: the importance of the business interest at risk; the nature and purpose of the rule; prior enforcement of the rule; good cause to justify the violation; and consistency with other rules." Gantt, 7 Va. App. at 635, 376 S.E.2d at 811. Absent proof of circumstances in mitigation, established to the satisfaction of the factfinder, the employee is "disqualified for benefits." Branch, 219 Va. at 611-12, 376 S.E.2d at 182.

Though Trent claimed 7-Eleven applied the rule inconsistently, the VEC found the allegation unpersuasive because "she provided no names of any employees who had violated the policy, and she admitted no managers she knew of had purchased prepaid phone cards through payroll deduction." The record fully supports this finding. Trent also argued she should have merely been warned for the first offense rather than fired. Yet nothing in the Unemployment Compensation Act or our precedent requires an employer to punish the first violation of a workplace rule with a mere warning rather than, as the 7-Eleven policy permits, a discharge. For these reasons, the VEC did not abuse its discretion in rejecting Trent's mitigation defense.

III.

The circuit court erred in vacating the VEC's order denying Trent's claim for unemployment benefits.  The administrative record provides ample support for the VEC's findings that Trent violated a legitimate workplace rule and that no mitigation circumstances excused the violation.

Reversed.