COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Humphreys
Argued at Salem, Virginia


JENNIFER G. FRANCIS

                                                          OPINION BY
v.        Record No. 0827-11-3              JUDGE ROBERT J. HUMPHREYS
                                                        NOVEMBER 29, 2011

VIRGINIA EMPLOYMENT COMMISSION AND
 WAL MART ASSOCIATES, INC.


            FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                              John T. Cook, Judge

            Greg Hairston (Caroline Klosko; Virginia Legal Aid Society, Inc., on
            brief), for appellant.

            Elizabeth B. Peay, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee Virginia
            Employment Commission.

            No brief or argument for appellee Wal Mart Associates, Inc.


        Jennifer G. Francis ("Francis") appeals a ruling from the Circuit Court for Campbell

County ("circuit court"), dated March 25, 2011, affirming a decision from the Virginia

Employment Commission ("VEC"), entered May 6, 2009, that disqualified Francis from

receiving unemployment compensation benefits under the Unemployment Benefits Act ("the

Act").  Specifically, Francis alleges the circuit court erred in affirming the VEC's ruling that

Francis was terminated from her employment at Wal-Mart for "misconduct connected with" her

work.  For the following reasons, we affirm the decision of the VEC.

                                    I.  Background

        The facts are not in dispute.  Francis was employed from June 8, 2006 to April 22, 2008,

as a merchandising supervisor in the health and beauty department at Wal-Mart, earning $8.35

per hour. Francis's job duties included making price changes on merchandise and stocking shelves. Francis also supervised two associates, and, on occasion, she was required to operate the cash register. Francis did not have any problems at Wal-Mart prior to April 22, 2008, and had never been disciplined at work.

On April 22, 2008, Francis informed Wal-Mart that she was going to be charged with two felony counts of welfare fraud. Wal-Mart suspended Francis's employment pending the outcome of the case and informed Francis that if she was found guilty of the charges, her employment with Wal-Mart would be terminated. Wal-Mart also gave Francis the option of resigning her employment so it would be easier to get another job. On May 26, 2008, Francis notified Wal-Mart that she had decided to plead guilty to the charges and, as a result, Francis submitted her resignation in lieu of termination. Francis ultimately received a suspended sentence and probation as a result of her convictions.

Francis filed a claim for unemployment benefits with the VEC on May 27, 2008. A claims deputy denied her claim on June 18, 2008, and Francis appealed. The appeals examiner conducted a telephonic hearing on September 18, 2008. At the hearing, Francis's immediate supervisor, Jennifer Campbell, confirmed that Francis would have been terminated had she not resigned, and explained that Francis violated Wal-Mart's code of ethics when she committed welfare fraud. Campbell stated that "fraud in itself is related to retail, because retail deals with dollars, it deals with paperwork dollars, it deals with physical dollars and merchandise." Campbell also admitted, however, that she would never have known about the charges against Francis had Francis not told her about them herself.

Lisa Radcliff, a store manager at Wal-Mart, admitted she had not received any complaints over Francis's job performance, but she confirmed that Francis's act of committing welfare fraud violated Wal-Mart's code of ethics. Radcliff specifically referenced a "financial

integrity" clause from Wal-Mart's code of ethics that requires "honest and accurate recording and reporting of financial information . . . in order for that Associate to make responsible decisions."  Wal-Mart did not provide a copy of the entire policy for review.

Upon the conclusion of all the testimony, Francis argued to the appeals examiner that the financial integrity clause in Wal-Mart's code of ethics is "talking about reporting information at Wal-Mart" and speculated "if she would have falsely reported something . . . her financial information at Wal-Mart . . . then that's what it would have applied [to]."  Francis argued that the policy "has nothing to do with what she did, welfare fraud.  It had nothing to do with her job at Wal-Mart."  Francis stressed that her supervisors would, in fact, never have known about the charges had she not told them herself and concluded that her misdeeds were "not connected with work."

The appeals examiner disagreed with Francis and denied benefits.  Francis then appealed to a special examiner.  By order entered May 6, 2009, the special examiner affirmed the appeals examiner and disqualified Francis from receipt of unemployment benefits.  The special examiner concluded,

> [Wal-Mart] has presented sufficient evidence to establish a reasonable nexus between [Francis's] job duties and responsibilities and the misconduct.  [Francis] pled guilty to and was convicted of felony welfare fraud, a crime of moral turpitude.  The evidence also established that [Francis's] job duties and responsibilities required her to, among other things, operate the cash register for the employer, which placed her in a fiduciary capacity, and a position of trust with the employer.

Francis appealed the matter to the circuit court.

The circuit court held a hearing on March 25, 2011, and "after considering the authorities and arguments of counsel," affirmed the VEC's decision.

Francis timely noted her appeal to this Court.

II. Analysis

The sole question on appeal is whether the circuit court erred in affirming the VEC's finding that Francis was terminated from her employment for misconduct "connected with work."[1]

In cases that originated in the VEC, we, "[l]ike the circuit court," must "'consider the evidence in the light most favorable to the finding by the Commission.'" Williamson v. Va. Empl. Comm'n & Mills Heating & Air Conditioning, Inc., 56 Va. App. 14, 17, 690 S.E.2d 304, 305 (2010) (quoting Wells Fargo Alarm Servs. v. Va. Empl. Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997)). "'If the commission's findings [of fact] are supported by the evidence, they are binding on appeal.'" Id. (quoting McNamara v. Va. Empl. Comm'n, 54 Va. App. 616, 624, 681 S.E.2d 67, 70 (2009)). In other words, where the Commission's findings of fact are supported by the evidence, "they are conclusive on appeal and our jurisdiction is limited to questions of law." Kennedy's Piggly Wiggly Stores, Inc. v. Cooper, 14 Va. App. 701, 704, 419 S.E.2d 278, 280 (1992) (citing Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988)). In cases where the facts are not in dispute, the only question this Court must decide is whether the Commission's findings of fact "are sufficient, as a matter of law, to constitute misconduct." Id. at 704, 419 S.E.2d at 280.

Under the Act, "'[t]he legislature intended unemployment benefits to be paid only to those who find themselves unemployed without fault on their part.'" Va. Empl. Comm'n v. Cmty. Alternatives, Inc., 57 Va. App. 700, 704, 705 S.E.2d 530, 532-33 (2011) (quoting Va. Emp't Comm'n v. Trent, 55 Va. App. 560, 568, 687 S.E.2d 99, 103 (2010)). Nevertheless, since

---

[1] According to the VEC, "[i]n cases where an employee is given the option of resigning or being discharged, and chooses to resign, the commission has consistently held that the separation from employment is involuntary and the merits of the case should be considered under [Code] § 60.2-618(2)." VEC does not dispute the fact that Francis's separation from employment was involuntary.

the Act is remedial in its purpose, id. at 708, 419 S.E.2d at 282 (citing Israel, 7 Va. App. at 172, 372 S.E.2d at 209), "[e]ven employees who are fired for what the employer considers good cause may be entitled to unemployment compensation," Blake v. Hercules, Inc., 4 Va. App. 270, 273, 356 S.E.2d 453, 455 (1987).  Thus, "'the statutory term "misconduct" should . . . be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception.'"  Piggly Wiggly, 14 Va. App. at 707-08, 419 S.E.2d at 282 (quoting 76 Am. Jur. 2d, Unemployment Compensation § 77 (1992)).

"'Furthering this policy goal, Code § 60.2-618(2)(a) [2] prohibits benefits if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.'"  Cmty. Alternatives, 57 Va. App. at 704, 705 S.E.2d at 532-33 (quoting Trent, 55 Va. App. at 568, 687 S.E.2d at 103).

> [A]n employee is guilty of "misconduct connected with his work"
> when he *deliberately* violates a company rule reasonably designed
> to protect the legitimate business interests of his employer, or
> when his acts or omissions are of such a nature or so recurrent as to
> manifest a *willful* disregard of those interests and the duties and
> obligations he owes his employer.

---

[2] Code § 60.2-618 provides:

> An individual shall be disqualified for benefits upon separation
> from the last employing unit for whom he has worked 30 days or
> 240 hours or from any subsequent employing unit:
>
> *     *     *     *     *     *     *
>
> 2. a. For any week benefits are claimed until he has performed
> services for an employer (i) during 30 days, whether or not such
> days are consecutive, or (ii) for 240 hours, and subsequently
> becomes totally or partially separated from such employment, if
> the Commission finds such individual is unemployed because he
> has been discharged for misconduct *connected with his work*.

(Emphasis added.)

- 5 -

Branch v. Virginia Employment Commission, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978) (emphasis in original). "'The Branch definition of misconduct has two prongs.'" Piggly Wiggly, 14 Va. App. at 705, 419 S.E.2d at 281 (quoting Israel, 7 Va. App. at 173, 372 S.E.2d at 209). "The first prong defines misconduct as a deliberate violation of a company rule." Id. at 705, 419 S.E.2d at 281. "[T]he second prong contemplates actions or omissions of such a nature or so recurrent as to manifest a willful disregard of the employer's interests and the duties and obligations the employee owes the employer." Id. "A forfeiture of benefits will be upheld only where the facts clearly demonstrate 'misconduct,'" id. at 707, 419 S.E.2d at 282, and "[t]he employer bears the burden of proving [that] misconduct," id. at 705, 419 S.E.2d at 280. Once that burden is met, the employee is disqualified for benefits "'[a]bsent circumstances in mitigation'" of his conduct. Id. (quoting Branch, 219 Va. at 611-12, 249 S.E.2d at 182). "'The burden of proving mitigating circumstances rests upon the employee.'" Id. at 705, 419 S.E.2d at 280-81 (quoting Branch, 219 Va. at 611-12, 249 S.E.2d at 182).

Francis does not dispute the validity of Wal-Mart's decision to terminate her employment for committing welfare fraud; rather, the issue in this case is Francis's ability, upon her discharge, to receive unemployment benefits. In other words, Francis does not deny that she committed misconduct; she merely alleges her misconduct was not in any way "connected with her work." We disagree with Francis and find that her actions meet the definition of misconduct under the second prong of the Branch test. Indeed, the record shows that Francis worked at Wal-Mart from June 8, 2006 to April 22, 2008, as a merchandising supervisor in the health and beauty department at Wal-Mart, earning $8.35 per hour. Francis's job duties included making price changes on merchandise and stocking shelves. Francis also supervised two associates, and on occasion, she was required to operate the cash register. Jennifer Campbell testified that Francis's job "deals with dollars, it deals with paperwork dollars, it deals with physical dollars

and merchandise." Thus, as the VEC found, Francis's job duties and responsibilities "placed her in a fiduciary capacity and a position of trust" with Wal-Mart.

Although Francis did not create any problems at Wal-Mart prior to April 22, 2008 and although she had never been disciplined at work, the fact remains that in her employment at Wal-Mart she was in a position of trust, and welfare fraud is a crime of moral turpitude. It follows that Francis's actions in committing welfare fraud placed her in a position of distrust and, by extension, manifested a willful disregard of Wal-Mart's interests and the duties and obligations Francis owed her employer. The fact that Francis herself found it necessary to report the pending charges to Wal-Mart suggests she knew her activities outside of employment had a bearing on Wal-Mart's interests. We, thus, agree with the VEC and the circuit court that Wal-Mart carried its burden of proving that Francis's misconduct was connected with her work, and Francis has failed to prove any mitigating circumstances justifying receipt of unemployment compensation.

In sum, the circuit court did not err in affirming the VEC's finding that Francis's misconduct was connected with her work, and its decision that she should be denied benefits under the Act is, therefore, affirmed.

Affirmed.