COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Humphreys and Chafin
Argued at Salem, Virginia

MARY HAMPSON

MEMORANDUM OPINION* BY
v.     Record No. 0218-12-3     JUDGE TERESA M. CHAFIN
NOVEMBER 27, 2012

VIRGINIA EMPLOYMENT COMMISSION AND
 ALTERNATIVE COMMUNITY EXPERIENCES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

Henry G. Bostwick, II (Caroline Klosko; Virginia Legal Aid
Society, Inc., on briefs), for appellant.

Joshua E. Laws, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Elizabeth B. Peay, Assistant
Attorney General, on brief), for appellee Virginia Employment
Commission.

No brief or argument for appellee Alternative Community
Experiences, Inc.

Mary Hampson ("appellant") appeals the circuit court's dismissal of her petition seeking

review of the Virginia Employment Commission's ("Commission") administrative decision

denying her unemployment benefits under Code § 60.2-618(2). Appellant argues that the

Commission and the circuit court (1) "erroneously concluded that [she] was terminated from her

job for misconduct connected with work pursuant to [Code] § 60.2-618;" (2) "failed to properly

consider the presence of mitigating circumstances as required by [Code] § 60.2-618(2)(b)(4);"

(3) "failed to properly conclude that [her] alleged violation was 'mere inefficiency, incapability,

mistake or misjudgment' pursuant to . . . this Court's decision in Borbas v. Virginia Emp't

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Comm'n, 17 Va. App. 720, 722, 440 S.E.2d 630, 631 (1994);" and (4) "erroneously concluded that the policy or rule at issue in [her] termination was 'reasonably designed to protect the legitimate business interests of' her former employer as required by Branch v. Virginia Emp't Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978)."[1] We disagree, and affirm the circuit court's decision.

## I.  BACKGROUND

"In accord with our usual standard of review, we 'consider the evidence in the light most favorable to the finding by the Commission.'"  Wells Fargo Alarm Servs. v. Virginia Emp't Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1995) (quoting Virginia Emp't Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987)).  So viewed, the record establishes that appellant was employed at Alternative Community Experiences ("ACE") from February 2006 until January 22, 2010.  ACE provides in-home care to disabled adults.  Appellant worked as an in-home caregiver for Patient A, a 61-year-old man with mild cerebral palsy.  Having worked with Patient A for approximately three years, appellant developed a close relationship with Patient A and his sister and legal guardian, Jennie Watson.  Appellant accompanied Patient A and his family on two out of town trips during her employment with ACE.

On January 15, 2010, appellant noticed that Patient A was out of one of his blood pressure medications.  On Sunday, January 17, appellant contacted her team leader, Jacqueline

---

[1] Appellant also argues that the Commission and the circuit court "failed to properly consider the Appeals Examiner's findings of witness credibility as required by this Court in Bullion Hollow Enters., Inc. v. Lane, 14 Va. App. 725, 418 S.E.2d 904 (1992)."  Appellant did not raise this argument before the Commission or circuit court.  In appellant's petition for judicial review of the Commission's decision, she stated only, "[t]he grounds for this petition are that the decision is contrary to law and is not supported by the evidence."  Appellant did not address the credibility issue in her objections to the circuit court's rulings.  Therefore, this Court will not address it on appeal.  See Rule 5A:18.

Osbourne, to inform her that Patient A had run out of this medication.[2] Patient A only needed this medication when his blood pressure exceeded 160; it was not his regular medication. On Monday, January 18, appellant called Osbourne again about the medicine and told her that Patient A's blood pressure was high, but did not report that it had reached 160. Osbourne told appellant to take Patient A to the emergency room if his blood pressure reached or exceeded 160. Appellant never contacted Elizabeth Scott, the president of ACE, about Patient A's medication issue.

Patient A called his legal guardian on Tuesday night, January 19, and told her that his medicine was not available for him.[3] Patient A was not able to read or write, so he was not sure which medication he needed. His legal guardian then asked to talk to the staff, and Patient A gave the phone to appellant. Patient A's legal guardian asked appellant which medicine Patient A did not have. Appellant answered that it was the blood pressure medicine that he takes if his blood pressure is over 160.

Scott terminated appellant on January 22 because appellant violated ACE's policy that support staff should not speak directly to family. In appellant's termination letter Scott wrote, "You of all people should be very aware that ACE protocol is that all communication with family is through the Team Leader and not the support staff." ACE maintains that appellant violated its "emergency procedures policy" and its "human rights policy," or "crisis intervention procedure."

---

[2] Appellant testified that she contacted Osbourne on January 15. Osbourne testified that she was not contacted until January 17.

[3] Osbourne placed an order for the medication when the pharmacy opened on Monday morning, January 18, but the prescription was outdated and the pharmacy had to request the refill from the doctor.

Scott testified that appellant violated the reporting procedure under the human rights policy on three different occasions and that appellant was informed on several occasions of the proper reporting procedures.[4] According to those procedures, appellant, as support staff, should have contacted the team leader or the director if she believed there was an emergency. Under no circumstances was she to communicate directly with the family or legal guardian of the patient. Scott testified that the purpose of the policy "is that the supervisor, the team leader and the supervisory personnel may be aware of other circumstances that the support staff would not be aware of and may be in a better position to talk with that family about the concerns and to respond to their concerns."

On April 29, 2010, based on appellant's claim for unemployment benefits and the facts presented but prior to any hearing, a claims deputy of the Commission determined that appellant qualified for unemployment benefits. The deputy noted that ACE discharged appellant due to abuse of company policy involving reporting procedures. The deputy found that the evidence presented did not establish that appellant "willfully violated [the] policy." ACE appealed the determination of the claims deputy.

The parties appeared before an appeals examiner of the Commission, where they presented evidence. The appeals examiner affirmed the determination of the deputy. The appeals examiner found that appellant's actions "do not rise to the level of misconduct connected with work. . . . [P]oor judgment or mistakes are not tantamount to misconduct." ACE appealed the decision of the appeals examiner to the Commission.

---

[4] On May 8, 2009, appellant received a "reminder" about ACE's protocol "dealing with not contacting . . . family, guardians, etc. of [patients]. Anything concerning her job or [patient] she needs to contact Team Leader first or Director if cannot contact Team Leader." Appellant was also warned on August 7, 2009 that she should have contacted the team leader or director prior to using a new body wash on the patient that his legal guardian provided for him.

On April 6, 2011, the parties appeared before a special examiner of the Commission and presented only oral argument; no exhibits were entered. The only question presented was whether appellant was "discharged for misconduct connected with work." The special examiner noted, "[Appellant] was aware that her employer's policy prohibited her from providing this information to the patient's sister and that, rather than answering the questions, she should have advised the sister to contact either the team leader or director." The special examiner found that appellant deliberately and willfully violated ACE's reasonable policy prohibiting communication with family members and that appellant did not prove any mitigating circumstances that adequately justified her actions.[5] The special examiner reversed the decision of the appeals examiner and denied appellant unemployment benefits under Code § 60.2-618(2).

Appellant appealed the final decision of the Commission to the circuit court, stating only that "[t]he grounds for this petition are that the decision is contrary to law and is not supported by the evidence." The circuit court affirmed the decision of the Commission without hearing oral argument. In a brief analysis, the court cited Branch v. Virginia Emp't Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1980):

> [A]n employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests . . . .

The circuit court concluded that "[u]nder the rationale of either approach, [appellant] was properly discharged for misconduct for violating ACE's policy regarding communication with [a] patient's family members." Appellant timely appealed the circuit court's ruling.

---

[5] Although the sole issue presented to the special examiner was whether appellant was discharged for misconduct connected with work, the special examiner raised the issue of mitigating circumstances *sua sponte* in his decision.

## II. ANALYSIS

"In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-625(A). "However, whether a claimant may be disqualified from unemployment benefits for work related misconduct 'is a mixed question of law and fact reviewable by this court on appeal.'" Helmick v. Martinsville-Henry Econ. Dev. Corp., 14 Va. App. 853, 855, 421 S.E.2d 23, 24 (1992) (quoting Israel v. Virginia Emp't Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988)). An appellate court reviews questions of law and of statutory interpretation *de novo*. Smit v. Shippers' Choice of Va., Inc., 277 Va. 593, 597, 674 S.E.2d 842, 844 (2009). Further, "Legislative acts . . . which provide funds for those temporarily unemployed are remedial in character. They should be liberally construed so that those justly entitled to compensation may not be denied, and the purpose of the legislation thus effectuated." Ford Motor Co. v. Unemployment Comp. Comm'n of Va., 191 Va. 812, 823-24, 63 S.E.2d 28, 33 (1951).

### A.

Appellant first argues that the "Commission and circuit court erroneously concluded that [she] was terminated from her job for misconduct connected with work pursuant to [Code § 60.2-618]."

The Unemployment Compensation Act is designed "to provide temporary financial assistance to [employees] who become unemployed through *no fault of their own*." Unemployment Comp. Comm'n v. Tomko, 192 Va. 463, 469, 65 S.E.2d 524, 528 (1951) (emphasis added). Code § 60.2-618(2) provides that an individual shall be disqualified for unemployment benefits "if the Commission finds such individual is unemployed because he has

been discharged for misconduct connected with his work." An employee commits misconduct when (1) "he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer," or (2) "when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer." Branch v. Virginia Emp't Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). "'[A] continuing recurrence of . . . violations over a period of time clearly establishes . . . a deliberate and willful misconduct.'" Helmick, 14 Va. App. at 859, 421 S.E.2d at 26 (alteration in original) (quoting Robinson v. Hurst Harvey Oil, Inc., 12 Va. App. 936, 940, 407 S.E.2d 352, 354 (1991)). "An employee's refusal to obey a reasonable directive of his or her employer may constitute misconduct so as to disqualify that employee from unemployment benefits." Id.

Appellant claims that she did not commit misconduct by knowingly violating ACE's policy prohibiting contact with a patient's family members. She contends that where the wording of a rule supports more than one interpretation, "the rule must be construed most strictly against its author and most liberally in favor of the employee." Branch, 219 Va. at 613, 249 S.E.2d at 183. She argues that she did not violate the rule or policies articulated in the warnings she received on May 8, 2009 and on August 7, 2009. In May 2009, she was reminded not to "contact" a patient's family member or guardian. In August 2009, after appellant used a body wash that was provided by Patient A's legal guardian, but was not approved by Patient A's doctor, she was warned to check with the team leader or director before making "a change that could affect an individual's health." In January 2010, however, appellant argues that she did not contact Patient A's legal guardian; she only answered her question.

While appellant argues that a clear distinction exists between the previous warnings she received and her conduct in this case, she cannot overcome her testimony before the appeals examiner. Appellant testified that she probably should not have told Patient A's legal guardian that Patient A was out of medication. She also admitted that she had received "prior warnings on following this type of procedure in the past" and that Scott would have wanted her to tell Patient A's legal guardian to contact the team leader or the director. Appellant testified that, despite prior warnings about violations of this specific policy, she disregarded these warnings in January 2010 because of her relationship with Patient A's family. This testimony demonstrates that appellant was aware of ACE's policy concerning communications with patients' family members, but disregarded the policy in this case.

As the record supports the conclusion that appellant deliberately and willfully violated a known business policy, the Commission and the circuit court did not err by finding that appellant committed misconduct connected with work pursuant to Code § 60.2-618.

B.

Appellant next argues that the "Commission and circuit court failed to properly consider the presence of mitigating circumstances as required by [Code] § 60.2-618(2)(b)(4)."

Code § 60.2-618(2)(b)(4) only addresses misconduct consisting of "[c]hronic absenteeism or tardiness," and provides that the Commission "*may* consider evidence of mitigating circumstances in determining whether misconduct occurred." (Emphasis added). Case law, however, allows the Commission to consider mitigating circumstances in other cases of misconduct. "Once the employer has borne the burden of showing misconduct connected with the work, either by violation of a rule or by an act manifesting a willful disregard of the employer's interest, the burden shifts to the employee to prove circumstances in mitigation of his

- 8 -

or her conduct." <u>Virginia Emp't Comm'n v. Gantt</u>, 7 Va. App. 631, 635, 376 S.E.2d 808, 811

(1989) (citing <u>Branch</u>, 219 Va. at 611-12, 249 S.E.2d at 182).

> Evidence of mitigation may appear in many forms which, singly or in combination, to some degree explain or justify the employee's conduct. Various factors to be considered may include: the importance of the business interest at risk; the nature and purpose of the rule; prior enforcement of the rule; good cause to justify the violation; and consistency with other rules. Therefore, in order to constitute misconduct, *the total circumstances* must be sufficient to find a deliberate act of the employee which disregards the employer's business interest.

<u>Id.</u> (emphasis added). When an employee's evidence fails to show mitigating circumstances, the

Commission must find that benefits are barred when a rule reasonably designed to protect a

legitimate business interest is violated. <u>Id.</u>

Appellant contends that mitigating circumstances justify her violation of ACE's policy.

She argues that she violated the policy to prevent a medical emergency. The Commission,

however, found that appellant did not believe that Patient A was experiencing a medical

emergency at the time she provided the information to his legal guardian. Appellant answered

"no" when asked if there was any type of medical emergency on the date of the violation.

Therefore, appellant cannot claim that her response to a medical emergency mitigates her

misconduct.

Additionally, appellant argues that ACE's policy concerning contact with patients' family

members is ambiguous and inconsistently defined. Appellant, however, testified that she was

aware of the policy and its requirements when she communicated with Patient A's legal guardian

on January 19, 2010. Therefore, she cannot rely on claims of policy ambiguity and inconsistency

as mitigating circumstances in this case.

Appellant also argues that her conversation with Patient A's legal guardian should be treated as a conversation with Patient A himself, citing Code § 37.2-1020. Appellant contends that, had she spoken to Patient A himself, she would not have violated her employer's policy. The Commission and the circuit court correctly held that this was not a mitigating circumstance. First, appellant signed the May 2009 warning reminding her of protocol at ACE "dealing with not contacting . . . , family, *guardians* etc. of individuals." (Emphasis added). Therefore, appellant was on notice of ACE's policy concerning communication with guardians. Secondly, no evidence was presented as to whether appellant was allowed to discuss Patient A's medication with him. In fact, appellant's termination letter suggests otherwise: "ACE protocol and best practices is that support staff should not discuss among each other in ear shot or directly in front of the individual details of their medical condition. . . . There is no reason for Patient A's emotional health to be compromised by him needlessly worrying about himself or his health." Because the Commission did not make a finding that ACE's policy would permit appellant to discuss Patient A's medication with him, this Court will not consider appellant's argument on this point.

Viewed in light of this evidence, the Commission and the circuit court did not err in finding appellant's alleged mitigating circumstances insufficient to justify her misconduct connected with work.[6]

---

[6] Appellant also contends that her conduct only constitutes a "de minimus" violation of ACE's policy. Appellant, however, provides no law to support this argument. As appellant's opening brief does not contain sufficient principles of law, argument, or citation to legal authorities or the record to fully develop this argument, and the failure to provide such authority is significant, we will not consider this argument. See Rule 5A:20(e).

C.

In addition, appellant argues that the Commission and circuit court failed to properly conclude that her alleged violation was "mere inefficiency, incapability, mistake or misjudgment." In Borbas v. Virginia Emp't Comm'n, 17 Va. App. 720, 722, 440 S.E.2d 630, 631 (1994), this Court held that "[a]lthough it certainly may justify an employee's discharge, behavior which is involuntary, unintentional or the product of simple negligence does not rise to the level necessary to justify a denial of unemployment benefits." Appellant argues that the record does not support that she was aware of the policy she violated on January 19. She contends that her conduct amounted to poor judgment, at most, and does not rise to the level of misconduct.

Appellant, however, affirmed that she "had received prior warnings about violation of this specific policy," and justified her violation of the policy through her close relationship with Patient A's family. Appellant committed misconduct by deliberately and willfully violating a known business policy. Thus, the record supports the judgment of the Commission and the circuit court that appellant's actions amounted to intentional misconduct beyond mere inefficiency, incapability, mistake, or misjudgment.

D.

Finally, appellant argues that the Commission and the circuit court erred in finding that ACE's policy was reasonably designed to protect the legitimate business interests of ACE, as required by Branch, 219 Va. at 611, 249 S.E.2d at 182.

An employer's rule must advance a legitimate business interest. Virginia Emp't Comm'n v. Trent, 55 Va. App. 560, 569, 687 S.E.2d 99, 103 (2010).

> To be legitimate, however, an employer's rule need not be a model
> of workplace governance or aspire to what some might view as

> best business practices. It need only be a reasonable effort by an employer to manage its workforce and to enforce its own expectations of workplace order. In this context, legitimate simply means not illegitimate.

Id. at 569, 687 S.E.2d at 103-04.

ACE's rationale for the rule forbidding support staff from contacting family is that "the team leader and the supervisory personnel may be aware of other circumstances that the support staff would not be aware of and may be in a better position to talk with that family about the concerns and to respond to their concerns." Thus, ACE's policy attempts to connect family members seeking information about a patient with those most apprised of that patient's circumstances. Appellant argues that the rule is unreasonable because there is no exception to the "no speak to family" rule and the rule "makes no distinction between a support staff's permission to relate important and complex patient information and information about trivial day-to-day patient needs."

While appellant apparently does not agree with ACE's practice regarding communication with patients' families, it is obvious that the rule is designed to streamline information disseminated to family members to prevent misinformation and to ensure that the person with presumably the most accurate information on the patient is the one communicating with concerned family members. As ACE's policy advances a legitimate business interest, the judgment of the Commission, affirmed by the circuit court, should not be disturbed.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's order affirming the Commission's decision denying appellant unemployment benefits under Code § 60.2-618(2).

Affirmed.